UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **SACV 19-815 JGB (SHKx)** | Date | June 20, 2019 |
|---|---|---|---|

| Title | ***Ubaldo Arroyo, et al. v. United States Department of Homeland Security, et al.*** |
|---|---|

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

Proceedings:    **Order (1) GRANTING-IN-PART and DENYING-IN-PART Plaintiffs' Motion for Preliminary Injunction (Dkt. No. 14); (2) GRANTING Plaintiffs' Ex Parte Application to File Document Under Seal (Dkt. No. 15); and (3) GRANTING-IN-PART and DENYING-IN-PART Plaintiffs' Motion to Provisionally Certify Class (Dkt. No. 17)**

Before the Court are two motions filed by Plaintiffs Ubaldo Arroyo, Jorge Poroj Sac, Atemnkeng Becky Njualem, Sergio Jonathan Moreno, Elieser David Blea, Santiago Guevara-Melgar, Bashir Abdi Wabare, Tanyi Ferick Awungdeu, Nguanyi Atabong Queenida, Asmerom Zemede Enabi, Public Law Center, and Public Counsel (collectively, "Plaintiffs").[1]  Plaintiffs move to provisionally certify a class.  ("Certification Mot.," Dkt. No. 17-1.)  They also move for a preliminary injunction.  ("PI Mot.," Dkt. No. 14-1.)  After considering all papers filed in support of and in opposition to the Motions, as well as the parties' arguments at the June 10, 2019, hearing, the Court GRANTS-IN-PART and DENIES-IN-PART Plaintiffs' Motion for Provisional Class Certification and GRANTS-IN-PART and DENIES-IN-PART Plaintiffs' Motion for a Preliminary Injunction.

///
///
///

---

[1] Plaintiffs Arroyo, Sac, Njualem, Moreno, Blea, Guevara-Melgar, Wabare, Awungdeu, Queenida, and Enabi will be referred to collectively as "Immigrant Plaintiffs."  Public Law Center and Public Counsel will be referred to as "Attorney Plaintiffs."

# I.  BACKGROUND

## A.  Procedural History

On May 2, 2019, Plaintiffs filed a complaint against the following Defendants: United States Department of Homeland Security ("DHS"), Kevin K. McAleenan, United States Immigration and Customs Enforcement ("ICE"), Ronald D. Vitello, Thomas Giles, Jennifer Herrera, Luke South, and Lisa Von Nordheim (collectively, "Defendants"). ("Complaint," Dkt. No. 1.) Plaintiffs' Complaint is a verified petition for writ of habeas corpus and a complaint for injunctive and declaratory relief. (Id.) The Complaint alleges that Defendants' conduct violates the Immigration and Nationality Act ("INA"), the Due Process Clause of the Fifth Amendment, the First Amendment (on behalf of Immigrant Plaintiffs), the First Amendment (on behalf of Attorney Plaintiffs), and the Administrative Procedure Act ("APA").

On May 13, 2019, Plaintiffs filed their Certification Motion and PI Motion. (See Certification Mot.; PI Mot.) In support of the PI Motion, Plaintiffs attached the following documents:

- Declaration of Sameer Ahmed ("Ahmed Declaration," Dkt. No. 14-3);
- Exhibits 1-9 to the Ahmed Declaration (Dkt. No. 14-4);
  - Article by Roxana Kopetman, "Uncertainty plagues families who worry immigrant detainees in Southern California will be sent out of state," O.C. Register (Apr. 12, 2019) ("Exhibit 1")
  - Orange County Sheriff's Department Press Release, March 27, 2019 ("Exhibit 2")
  - Article by Roxana Kopetman, "Sheriff to stop holding ICE detainees in Orange County jails," O.C. Register (Mar. 27, 2019) ("Exhibit 3")
  - ICE Policy 11022.1: Detainee Transfers (Jan. 4, 2012) ("Exhibit 4")
  - ICE Enforcement and Removal Operations Field Offices ("Exhibit 5")
  - March 28, 2019 Ahmed Email to ICE Assistant Field Office Director Jennifer Herrera ("Exhibit 6")
  - April 8, 2019 Email from ICE Acting Chief Counsel of the Office of the Principal Legal Advisor in Los Angeles, California to Ahmed ("Exhibit 7")
  - Ingrid Eagly & Steven Shafer, Access to Counsel in Immigration Court (Sept. 2016) ("Exhibit 8")
  - May 2019 Email Correspondence Between Defense Counsel Joanne S. Osinoff and Plaintiffs' Counsel Sameer Ahmend and Ahilan Arulanantham ("Exhibit 9")
- Declaration of Asmerom Zemede Enabi ("Enabi Declaration," Dkt. No. 14-5);
- Declaration of Atemnkeng Becky Njualem ("Njualem Declaration," Dkt. No. 14-6);
- Declaration of Bashir Abdi Wabare ("Wabare Declaration," Dkt. No. 14-7);
- Declaration of Daniela Hernandez Chong Cuy ("Cuy Declaration," Dkt. No. 14-8);
- Declaration of Jorge Poroj Sac ("Sac Declaration," Dkt. No. 14-9);
- Declaration of Monica Glicken ("Glicken Declaration," Dkt. No. 14-10);

- Declaration of Nguanyi Atabong Queenida ("Queenida Declaration," Dkt. No. 14-11);
- Declaration of Santiago Guevara-Melgar ("Guevara-Melgar Declaration," Dkt. No. 14-12);
- Declaration of Sergio Jonathan Moreno ("Moreno Declaration," Dkt. No. 14-13);
- Declaration of Talia Inlender ("Inlender Declaration," Dkt. No. 14-14);
- Declaration of Tanyi Ferick Awungdeu ("Awungdeu Declaration," Dkt. No. 14-15);
- Declaration of Ubaldo Arroyo ("Arroyo Declaration," Dkt. No. 14-16); and
- Proposed Order (Dkt. No. 14-2).

On May 13, 2019, Plaintiffs also filed an Application to File Under Seal the Declaration of Plaintiff Blea. ("Application," Dkt. No. 15.) Included with the Application is a redacted version of Blea's declaration. ("Blea Declaration," Dkt. No. 15-2.)[2]

---

[2] There is a strong presumption of public access to judicial records and documents. Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 n.7 (1978) ("It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents."); Pintos v. Pac. Creditors Ass'n, 605 F.3d 665, 677 (9th Cir. 2010). The presumption applies to pleadings filed with the court and extends to discovery material attached to those pleadings. Foltz v. State Farm Mut. Auto. Ins. Co., 331 F.3d 1122, 1134 (9th Cir. 2003). Although a request to seal judicial records offends the presumption in favor of public access, the right of access "is not absolute." Id. at 1135.

Generally, two standards govern requests to seal documents: the "compelling reasons" standard and the "good cause" standard. Pintos, 605 F.3d 665 at 677. A party seeking to seal judicial records relating to a dispositive motion must overcome the strong presumption of public access by satisfying the compelling reasons standard. Kamakana v. City and Cty of Honolulu, 447 F.3d 1172, 1178 (9th Cir. 2006). "That is, the party must articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure." Id. at 1178–79 (internal citation of quotation marks omitted). "[C]ompelling reasons sufficient to outweigh the public's interest in disclosure and justify the sealing of court records exist when such court files might have become a vehicle for improper purposes, such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." Id. (citing Nixon, 435 U.S. at 598). However, "[t]he mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." Id. (citing Foltz, 331 F.3d at 1136).

While the presumption of public access is the starting point of a court's analysis for dispositive motions, the presumption does not apply to non-dispositive motions. Id. at 1179; see also Pintos, 565 F.3d at 678–79. "[T]he public has less of a need for access to court records attached only to non-dispositive motions because those documents are often unrelated, or only tangentially related, to the underlying cause of action." Kamakana, 447 F.3d at 1179 (internal

On May 20, 2019, Defendants opposed the Certification Motion and the PI Motion. ("Certification Opposition," Dkt. No. 25; "PI Opposition," Dkt. No. 24.) In support of their Certification Opposition, Defendants attached the declaration of Marisa Flores. ("Flores Certification Declaration," Dkt. No. 25-1.) In support of their PI Opposition, Defendants attached another declaration of Marisa Flores. ("Flores PI Declaration," Dkt. No. 24-1.) Plaintiffs replied on May 24, 2019. ("Certification Reply," Dkt. No. 27; "PI Reply," Dkt. No. 26.) In support of their PI Reply, Plaintiffs attached the following documents:

- Declaration of Talia Inlender ("Inlender Reply Declaration," Dkt. No. 26-1);
    - Fee Waiver Request ("Exhibit A," Dkt. No. 26-2);
    - Ninth Circuit In Forma Pauperis Form ("Exhibit B," Dkt. No. 26-3); and
- Declaration of Monica Glicken ("Glicken Reply Declaration," Dkt. No. 26-4).

On June 10, 2019, the Court held a hearing.

## B. Factual History

ICE contracts with the Orange County Sheriff's Department ("OSCD") to detain up to 958 immigrants at the James A. Musick Facility in Orange, California and the Theo Lacy Facility in Irvine, California ("the Facilities"). (Ex. 1.) On the date Plaintiffs filed their Motions, they estimated about 545 immigrants were then detained at the Facilities pursuant to this contract. (Id.) On March 27, 2019, OSCD notified ICE that it was terminating the contract to detain immigrants. (Ex. 2.) The contract requires ICE to remove all immigrants detained at the Facilities within 120 days of termination, or August 1, 2019. (Id.; Flores PI Decl. ¶ 5.) OCSD explained that individuals detained at the Facilities pursuant to the ICE contract "will most likely

---

citation omitted). Thus, a party moving to seal judicial records need only meet the good cause standard. Foltz, 331 F.3d at 1135; Phillips ex rel. Estates of Byrd v. General Motors Corp., 307 F.3d 1206, 1213 (9th Cir. 2002).

Here, Plaintiffs seek to redact portions of the Blea Declaration, as it contains identifying and sensitive immigration-related information about Mr. Blea and his family. (Appl. at 1.) Plaintiffs explain that the information cannot be publicly disclosed pursuant to 8 U.S.C. § 1367(a)(2). The Court notes that the compelling reason standard likely applies despite the fact that a motion for preliminary injunction is not necessarily "dispositive." See Center for Auto Safety v. Chrysler Group, LLC, 809 F.3d 1092, 1101-02 (9th Cir. 2016). The guiding inquiry turns on whether the motion is "more than tangentially related to the merits of a case. While many technically nondispositive motions will fail this test, some will pass." Id. at 1101. Here, Plaintiffs' PI Motion is more than tangentially related to the merits of their case. Thus, the compelling reasons standard applies. The Court also finds Plaintiffs satisfy this burden, as 8 U.S.C. § 1367(a)(2) prohibits DHS and Department of State employees from disclosing such information. The portions of the Blea Declaration Plaintiffs seek to redact contain sensitive immigration information satisfying the compelling reasons standard. Furthermore, Defendants do not oppose the Application. Accordingly, the Court GRANTS the Application.

be transferred outside of California, separating them from family members who reside within this state." (Ex. 2.)  An ICE spokeswoman expressed a similar forecast, stating that "instead of being housed close to family members or local attorneys, ICE will have to depend on its national system of detention bed space to place those detainees in locations farther away reducing the opportunities for in-person family visitation and attorney coordination." (Ex. 3.)  On April 18, 2019, ICE Deportation Officer Bell explained to attorney Daniela Hernandez Chong Cuy that immigrants detained at the Facilities who do not have serious mental disorders would be sent to detention centers in San Francisco, Florida, or other out of state facilities. (Cuy Decl. ¶¶ 2, 4-5.)

On April 8, 2019, Marty Ryan, Acting Chief Counsel for ICE's Office of the Principal Legal Advisor in Los Angeles, California responded to an email from Plaintiffs' counsel explaining "ICE is reviewing case information for the ICE detainees housed at [the Facilities]. Transfers of ICE detainees are made on a case-by-case basis in accordance with applicable law and ICE policy. (Ex. 7.)

ICE has internal policies governing the transfer of immigrant detainees.  The policy prevents transfer of individuals with immediate family or attorneys within a particular ICE field office's Area of Responsibility ("AOR").  (Ex. 4.)  The Facilities are part of the ICE Los Angeles Field Office's AOR, which includes the following counties: Los Angeles, Orange, Riverside, San Bernardino, Ventura, Santa Barbara, and San Luis Obispo.  (Ex. 5.)  The ICE Transfer Policy No. 11022.1 ("ICE Policy 11022.1") states:

> Unless a transfer is deemed necessary by a [Field Office Director] or his or her designee . . ., ICE Supervisory Immigration Officer(s) will not transfer a detainee when there is documentation to support the following: a) Immediate family within the AOR; b) An attorney of record . . . within the AOR; c) Pending or on-going removal proceedings, where notification of such proceedings has been given, within the AOR; or d) Been granted bond or has been scheduled for a bond hearing.

(Ex. 4 at 2-3.)  ICE Policy 11022.1 further adds:

> The Immigration Officer will conduct a review to determine whether any of these factors exist.  Before a transfer is made in a case where one or more of these factors exist, the transfer must be approved at the Assistant Field Office Director level or higher, and the reasons for the transfer must be documented in the detainee's A-File . . . ICE Supervisory Immigration Officers will conduct a thorough review of the most current information available to make all detainee transfer determinations.

(Id. at 3-4.)  After ICE determines it will transfer an individual protected by this policy, ICE must notify the attorney of record, if there is one, when the detainee is transferred.  (Id.)  This notification must occur on the date of transfer (and no later than 24 hours after transfer) and

include "the reason for the transfer and the name, location, and telephone number of the new facility[.]" (<u>Id.</u> at 4.)

The ICE Los Angeles AOR includes only three detention facilities: the Adelanto ICE Processing Center ("Adelanto") in San Bernardino County and the Facilities. (Flores PI Decl. ¶ 4.) No city, county, or local law enforcement agencies in California "may enter into a contract with the federal government or any federal agency or a private corporation, to house or detain in a locked detention facility noncitizens for purposes of civil immigration custody." Cal. Civ. Code § 1670.9(a). Since the OCSD announcement, the immigrant detainee population at the Facilities has declined. (Flores PI Decl. ¶¶ 6-7.) Defendants attribute the reduction in population to the following: transfer of detainees with serious medical and mental health needs to Adelanto, release upon receiving of relief from removal, release on bond, release through parole, release through orders of recognizance or supervision, or deportation of individuals with final removal orders. (<u>Id.</u> ¶ 6.) As of May 16, 2019, the Facilities detained approximately 447 immigrants. (<u>Id.</u> ¶ 7.) Adelanto has capacity to hold 1,940 immigrant detainees. (<u>Id.</u> ¶ 8.) As of May 16, 2019, Adelanto holds 1,818 detainees. (<u>Id.</u>) ICE represents that if it is necessary to transfer an individual detained at the Facilities outside the Los Angeles AOR, it will adhere to ICE Policy 11022.1. (<u>Id.</u> ¶ 11.)

Plaintiffs contend transfers outside the AOR interfere with Immigrant Plaintiffs' right to effective assistance of counsel under the Due Process Clause and the INA. (Compl. ¶¶ 59, 92-97, 98-105.) They also assert that transfers outside the AOR violate Attorney Plaintiffs' First Amendment rights, Immigrant Plaintiffs' First Amendment rights, and the APA. (<u>Id.</u> ¶¶ 106-119.) For purposes of the requested preliminary injunction, Plaintiffs seek provisional certification of the following class and two sub-classes:

> All immigrants imprisoned at the James A. Musick Facility and the Theo Lacy Facility and who have attorneys or immediate family members within the ICE Los Angeles Field Office's Area of Responsibility.

> **<u>Sub-Class One:</u>** All immigrants imprisoned at the James A. Musick Facility and the Theo Lacy Facility and who have attorneys within the ICE Los Angeles Field Office's Area of Responsibility.

> **<u>Sub-Class Two:</u>** All immigrants imprisoned at the James A. Musick Facility and the Theo Lacy Facility and who have immediate family members within the ICE Los Angeles Field Office's Area of Responsibility.

(Certification Mot. at 1; <u>see also</u> Compl. ¶¶ 79-80.) Plaintiffs request the Court to enjoin Defendants as follows:

> Defendants must refrain from transferring immigration detainees currently held at the Theo Lacy and James A. Musick Facilities to facilities outside the ICE Los Angeles Field Office's Area of Responsibility if those detainees

have attorneys or immediate families within the ICE Los Angeles Field Office's Area of Responsibility.

(Proposed Order.)

## II.   LEGAL STANDARDS

### A.  Provisional Class Certification

Courts in the Ninth Circuit "routinely grant provisional class certification for purposes of entering injunctive relief." Carrillo v. Schneider Logistics, Inc., 2012 WL 556309, at *9 (C.D. Cal. Jan. 31, 2012) (citing Baharona-Gomez v. Reno, 167 F.3d 1228, 1233 (9th Cir. 1999)). Federal Rule of Civil Procedure 23 ("Rule 23") governs the litigation of class actions. A party seeking class certification must establish the following prerequisites:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). After satisfying the four prerequisites of numerosity, commonality, typicality, and adequacy, a party must also demonstrate one of the following: (1) a risk that separate actions would create incompatible standards of conduct for the defendant or prejudice individual class members not parties to the action; (2) the defendant has treated the members of the class as a class, making appropriate injunctive or declaratory relief with respect to the class as a whole; or (3) common questions of law or fact predominate over questions affecting individual members and that a class action is a superior method for fairly and efficiently adjudicating the action. See Fed. R. Civ. P. 23(b)(1)-(3).[3]

A trial court has broad discretion regarding whether to grant a motion for class certification. See Bateman v. Am. Multi-Cinema, Inc., 623 F.3d 708, 712 (9th Cir. 2010). However, "[a] party seeking class certification must affirmatively demonstrate compliance with [Rule 23]—that is, the party must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011). A district court must conduct a "rigorous analysis" that frequently "will entail some overlap with the merits of the plaintiff's underlying claim." Id. at 351. "Courts typically proceed claim-by-claim in determining whether the Rule 23 requirements have been

---

[3] While some circuits have adopted an "ascertainability" prerequisite to certification, the Ninth Circuit has not. Briseno v. ConAgra Foods, Inc., 844 F.3d 1121, 1124 n.4 (9th Cir. 2017) ("ConAgra cites no other precedent to support the notion that our court has adopted an 'ascertainability' requirement. This is not surprising because we have not. Instead, we have addressed the types of alleged definitional deficiencies other courts have referred to as 'ascertainability' issues . . . through analysis of Rule 23's enumerated requirements.").

met, particularly as to the Rule 23(a)(2) and (b)(3) requirements of common questions and predominance." <u>Allen v. Verizon California, Inc.</u>, 2010 WL 11583099, at *2 (C.D. Cal. Aug. 12, 2010).

Rule 23 further provides that "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues," Fed. R. Civ. P. 23(c)(4), or the "class may be divided into subclasses that are each treated as a class under this rule," Fed. R. Civ. P. 23(c)(5). "This means that each subclass must independently meet the requirements of Rule 23 for the maintenance of a class action." <u>Betts v. Reliable Collection Agency, Ltd.</u>, 659 F.2d 1000, 1005 (9th Cir. 1981).

## B. Preliminary Injunction

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." <u>Winter v. Natural Res. Def. Council, Inc.</u>, 555 U.S. 7, 20 (2008). "A preliminary injunction is an extraordinary and drastic remedy; it is never awarded as of right." <u>Munaf v. Geren</u>, 553 U.S. 674, 690 (2008) (citations omitted). An injunction is binding only on parties to the action, their officers, agents, servants, employees and attorneys and those "in active concert or participation" with them. Fed. R. Civ. P. 65(d).

Under the Ninth Circuit's "sliding scale" approach to preliminary injunctions, the four "elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." <u>All. For The Wild Rockies v. Cottrell</u>, 632 F.3d 1127, 1131 (9th Cir. 2011). Thus, "a preliminary injunction could issue where the likelihood of success is such that serious questions going to the merits were raised and the balance of hardships tips sharply in [plaintiff's] favor.'" <u>Id.</u> at 1131–32 (internal quotation omitted). Put differently, "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements [likelihood of irreparable injury and public interest] of the <u>Winter</u> test are also met." <u>Id.</u> at 1132. Regardless of the strength of its showings on the other factors, a plaintiff may not obtain a preliminary injunction unless they show that irreparable harm is likely to result in the absence of the requested injunction. <u>Id.</u> at 1135.

## III.    DISCUSSION

### A. Class Certification

Defendants argue the Certification Motion should be denied for the following reasons: (1) the Court lacks jurisdiction to enter the requested class-wide relief; (2) the Certification Motion does not establish an ascertainable class; and (3) the proposed class and sub-classes do not satisfy the requirements of Rule 23. (<u>See</u> Certification Opp'n.)

### 1.   Jurisdiction to Enter Class-Wide Relief

Defendants argue the Court lacks jurisdiction to grant the class-wide injunctive relief Plaintiff seeks.  Specifically, Defendants note that 8 U.S.C. § 1252(f)(1) bars this Court from enjoining the operation of certain provisions of the INA.[4]  (See Certification Opp'n at 5-7.) Section 1252(f)(1) provides as follows:

> [N]o court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of part IV of this subchapter, as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated.

8 U.S.C. § 1252(f)(1).  This bar applies to the operation of 8 U.S.C. §§ 1221-1231, which concern inspection, apprehension, examination, exclusion, and removal.  See 8 U.S.C. §§ 1221-1231; Reno v. Am.-Arab Anti-Discrimination Comm., 525 U.S. 471, 481 (1999) ("AADC").  Section 1231(g)(1) provides that the Secretary of DHS "shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal."  8 U.S.C. § 1231(g)(1).

However, Section 1252(f)(1) contains an express exception "with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated."  Id. § 1231(g)(1).  The Ninth Circuit has suggested that this jurisdictional bar does not apply where all individuals in a putative class are individuals against whom removal proceedings have been initiated.  See Rodriguez v. Marin, 909 F.3d 252, 256-57 (9th Cir. 2018) ("Rodriguez V").  The Circuit Court for the District of Columbia has similarly suggested that the prohibition against injunctive relief reflects Congress's intent "to allow litigation challenging the new system by, and only by, aliens against whom the new procedures had been applied." American Immigration Lawyers Ass'n v. Reno, 199 F.3d 1352, 1359-60 (D.C. Cir. 2000) ("AILA").  The AILA court made this observation in its discussion of third-party standing.  Id. This reading is reasonable, as § 1252(f)(1) was enacted after a wave of litigation brought by organizations and classes of individuals not in removal proceedings to preemptively challenge the enforcement of certain immigration statutes.  See, e.g., Reno v. Catholic Soc. Servs., Inc., 509 U.S. 43 (1993).  This action is different.  Immigrant Plaintiffs are already in removal proceedings. (See Compl. ¶¶ 8-26.)  Accordingly, each is "an individual alien against whom [removal] proceedings . . . have been initiated."  See 8 U.S.C. § 1252(f)(1).  Because Immigrant Plaintiffs satisfy the exception to the jurisdictional bar, this Court has jurisdiction to adjudicate Plaintiffs' PI Motion.

---

[4] The Court notes this is not actually an argument against class certification, but an argument against granting a preliminary injunction.  In fact, Defendants include the same argument—almost verbatim—in their PI Opposition.  (See PI Opp'n at 11-12.)  The Court advises Defendants to avoid unnecessary duplication of arguments.

Plaintiffs spend a significant portion of their Certification Reply arguing that § 1252(f)(1) does not preclude individuals in removal proceedings from seeking injunctive relief as a class. (Certification Reply at 3-5.)  They argue such a bar would produce bizarre results; the language of "any individual" has not precluded class actions in other contexts; and Congress expressly prohibits class actions in statutory text when it intends such a bar.  (Id.)  The Court finds these arguments persuasive.  It is especially significant that § 1252(f)(1) is silent as to a prohibition on class actions when another subsection in the same provision expressly prohibits class actions.  See 8 U.S.C. § 1252(e)(1)(B) (as to judicial review of orders under 8 U.S.C. § 1225(b)(1), "no court may certify a class under Rule 23 of the Federal Rules of Civil Procedure in any action for which judicial review is authorized under a subsequent paragraph of this subsection").  Accordingly, the Court finds Congress's failure to prohibit class actions for plaintiffs already in removal proceedings is meaningful and intentional.  The Court has jurisdiction to grant class-wide injunctive relief in this action.

### 2.  Ascertainable Class

Defendants argue the proposed class and subclasses are not ascertainable.  (Certification Opp'n at 7-9.)  This argument fails.  As a preliminary matter, the Court notes that ascertainability is not a prerequisite to certification in the Ninth Circuit.  See Briseno, 844 F.3d at 1124 n.4.  Thus, Defendants' ascertainability arguments are inherently misguided.  The Court further notes that that even if there were an ascertainability requirement, Plaintiffs have satisfied it.

First, Defendants assert the class is not ascertainable because the class definitions fail to include a date range.  (Certification Opp'n at 7-8.)  Without such a time-limitations, they argue, the proposed classes would include "all former detainees of the Orange County facilities who have been subsequently released, as well as all persons who have yet to come into the custody of ICE, or for that matter all of the persons who have yet to decide to try to enter into the United States illegally."  (Id. at 7.)  Defendants assert that "[s]uch a definition . . . would include all individuals who are not citizens of the United States, whether or not they have any plans to ever enter the United States, legally or not."  (Id.)  Common sense quickly disposes of this argument.  The class and subclasses include "[a]ll immigrants imprisoned at the [Facilities.]"  (Certification Mot. at 1.)  This is clearly written in the present tense, including only those immigrants currently detained at the Facilities who satisfy the other class criteria.  Defendants' assertion that formerly imprisoned immigrations are included in the class asks the Court to adopt an unnatural and nonsensical interpretation of the proposed class definitions.  Additionally, the class does not include individuals who are not yet present in the United States without permission, much less any person who is not a United States citizen.  It includes only those individuals currently imprisoned who satisfy the other class criteria.  Furthermore, should ICE detain additional individuals at one of the Facilities before August 1, 2019, those individuals would properly become members of the class.  Rodriguez v. Hayes, 591 F.3d 1105, 1118 (9th Cir. 2010) ("Rodriguez I") ("The inclusion of future class members in a class is not itself unusual or objectionable.").  Accordingly, the Court finds a date range is unnecessary, as the proposed class

and sub-classes clearly include only those individuals currently imprisoned in the Orange County facilities or who become imprisoned in the Orange County facilities.

Second, Defendants argue the classes are not ascertainable because confirmation of class membership is administratively difficult. (Certification Opp'n at 8-9.) They explain that oftentimes the information available to ICE concerning an immigrant's representation is unreliable. (Id. at 8.) For example, they note immigrants only submit a Form G-28 voluntarily and often fail to inform DHS of any changes in their representation. (Id.; Flores Certification Decl. ¶¶ 9-10.) They also note that ICE Policy 11022.1 governing transfers of detainees defines immediate family but does not provide for specific documentation to verify the presence of qualifying relatives in the AOR. (Certification Opp'n at 9.) Defendants assert that determining whether a detained immigrant has qualifying family within the AOR would require extensive investigation. (Id.) In other words, Defendants argue the class and subclasses are not ascertainable because there would be a compliance burden. First, the Court is not persuaded that it would be prohibitively difficult to determine whether an immigrant has counsel or immediate family within the AOR. Defendants admit that an immigrant's file may contain a Form G-28 or information concerning the residence of immediate family members. (Flores Certification Declaration ¶¶ 9-11.) If a file contains such information, it is likely a strong indicator that the immigrant has either counsel or qualifying family in the AOR. If the file does not contain such information or Defendants believe the information is stale, they may simply ask the immigrant. Second, the Ninth Circuit expressly rejects that a compliance burden bars certification under Rule 23. See Briseno, 844 F.3d at 1126 ("The language of Rule 23 does not impose a freestanding administrative feasibility prerequisite to class certification.") Accordingly, Rule 23 "neither provides nor implies that demonstrating an administratively feasible way to identify class members is a prerequisite to class certification[.]" Id. at 1133.

### 3. Rule 23(a) Requirements

#### a. Numerosity

A class satisfies the prerequisite of numerosity if it is so large that joinder of all class members is impracticable. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). To be impracticable, joinder must be difficult or inconvenient but need not be impossible. Keegan v. American Honda Motor Co., 284 F.R.D. 504, 522 (C.D. Cal. 2012). There is no numerical cutoff for sufficient numerosity. Id. However, forty or more members will generally satisfy the numerosity requirement. Id. In their Certification Motion, Plaintiffs estimate there are approximately 545 immigrants detained at the Facilities. (Certification Mot. at 2 (citing Ex. 1).) Nationally, approximately 14% of detained immigrants are represented by counsel. (Ex. 8 at 4-5.) Monica Glicken, an attorney at the Public Law Center's Immigration Unit estimates that 10-20% of detained immigrants at the Orange County facilities have attorneys representing them in some aspect of their immigration proceedings. (Glicken Decl. ¶ 20.) Based on these numbers, Plaintiffs estimate about 75 immigrants are members of sub-class one. (Certification Mot. at 3.) Glicken also estimates that over 60% of the immigrants detained at the Facilities have immediate family in the AOR. (Glicken Decl. ¶ 19.) Accordingly, Plaintiffs estimate more than 300

detained immigrants are members of sub-class two.  Based on these calculations, the proposed class and sub-classes are sufficiently numerous.  Defendants do not contest that the numerosity requirement is satisfied.  The Court therefore finds the class is sufficiently numerous that joinder of all class members would be impracticable.

### b.  Commonality

The commonality requirement is satisfied when plaintiffs assert claims that "depend upon a common contention . . . capable of classwide resolution—which means that a determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  Wal-Mart, 564 U.S. at 350; see also id. ("What matters to class certification . . . is not the raising of common questions . . . but, rather, the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation.") (internal quotation marks and citations omitted).  Differences among putative class members can impede the generation of such common answers.  Id.  In the Ninth Circuit, "Rule 23(a)(2) has been construed permissively. . . . The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."  Staton v. Boeing Co., 327 F.3d 938, 953 (9th Cir. 2003).

Plaintiffs argue they satisfy the commonality requirement because they are each subject to Defendants' transfer determinations that will likely result in transfers outside the Southern California region.  (Certification Mot. at 4-5.)  They further argue the action raises the following common questions: (1) whether transfer outside Southern California interferes with established attorney-client relationships violating INA and the Due Process Clause; (2) whether transfer outside Southern California violates represented Plaintiffs' right of access to the courts under the Due Process Clause and the First Amendment; (3) whether transfer outside Southern California violates unrepresented Plaintiffs' right to a fair hearing and to gather and present evidence under the Due Process Clause and the INA; and (4) whether transfer outside Southern California violates ICE Policy 11022.1.  (Id. at 5.)

Defendants contest commonality, noting that due process requires separate inquiries into each individual class member's particular circumstance.  (Certification Opp'n at 11.)  They argue the Court cannot not determine "in one stroke" that a transfer outside of the AOR would likely violate the rights of every class member.  (Id.)  Defendants contend that different phases of removal proceedings change the impact of geographic separation from counsel and immediate family.  (Id. at 11-12.)  For example, an immigrant preparing for a merits hearing may need to gather evidence and witnesses to establish a defense to removal whereas an immigrant preparing for an appeal to the Board of Immigration Appeals ("BIA") or filing a petition for review with the Ninth Circuit would likely be working off a closed record.  (See id.)  Thus, the Government argues, geographic separation affects access to counsel and access to courts differently depending on the stage of an immigrant's proceedings.  (Id.)

"Courts typically proceed claim-by-claim in determining whether the Rule 23 requirements have been met, particularly as to the Rule 23(a)(2) . . . requirement[] of common

questions[.]"   Allen, 2010 WL 11583099, at *2.  As addressed below in Part III.B.1.b, Plaintiffs' PI Motion does not brief Immigrant Plaintiffs' likelihood of success on the merits of their First Amendment Claims.  Also addressed below, the Court finds Immigrant Plaintiffs fail to establish a likelihood of succeeding on the merits of their APA claim.  See infra Part III.B.1.c.ii.  The Court also finds it lacks jurisdiction as to unrepresented Immigrant Plaintiffs' Due Process and INA claims.  See infra Part III.B.1.a.i.  Accordingly, the Court will not address the commonality issues as to these claims.  The Court need only consider commonality as to represented Immigrant Plaintiffs' Due Process and INA claims.

The claims of represented Immigrant Plaintiffs arise from the impending mass transfer outside the AOR of individuals with local counsel or local immediate family.  At the June 10, 2019 hearing, Defendants represented that as of June 6, 2019, there are approximately 240 available spaces at Adelanto but approximately 330 immigrants detained at the Facilities with either local counsel or local immediate family.  Thus, the impending August 1, 2019 termination of ICE's relationship with OCSD threatens to displace approximately 90 individuals with counsel or immediate family in the AOR.  Given this information, a mass transfer of these individuals at the Facilities will affect represented Immigrant Plaintiffs as a class.  Furthermore, Plaintiffs identify the following question common to all members of the proposed subclass of represented Immigrant Plaintiffs: whether transfer outside Southern California interferes with established attorney-client relationships violating the INA and the Due Process Clause.  (Certification Mot. at 5.)  The Court finds this question is capable of class-wide resolution.  As addressed below in Part III.B.1.a, represented Immigrant Plaintiffs assert that because they have already retained counsel, the threatened transfers outside the AOR unduly burden and effectively destroy their established counsel relationships, violating the right to counsel of their choosing under the Due Process Clause and the INA.  In other words, they allege harm to their ongoing legal representation and attorney-client relationship.  This construction of represented Immigrant Plaintiffs' claims, then, does not rely on the underlying procedural posture of each individual's proceedings, but instead on the burden to, or destruction of, her relationship with retained counsel.  That some individuals may suffer a greater burden on this relationship due to the procedural posture of their proceedings does not preclude commonality.

Thus, the Court concludes represented Immigrant Plaintiffs satisfy the commonality requirement because they establish ICE's impending transfers threaten each member of the proposed sub-class with geographic separation from their retained counsel.  Consequently, the proposed sub-class members' claims that such a transfer would be illegal could be disposed of "in one stroke."  See Wal-Mart, 564 U.S. at 351.  Accordingly, the commonality requirement is satisfied as to the Due Process and INA claims of represented Immigrant Plaintiffs.

### c.  Typicality

"The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class."  Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992).  The typicality inquiry focuses on the claims, not the specific facts underlying them.  Just Film, Inc. v. Buono, 847 F.3d 1108, 1116 (9th Cir. 2017).  "The

requirement is permissive, such that 'representative claims are typical if they are reasonably coextensive with those of absent class members; they need not be substantially identical.'" Id. (quoting Parsons v. Ryan, 754 F.3d 657, 685 (9th Cir. 2014)). "Measures of typicality include whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." Id. (internal quotations and citations omitted). The applicability of different defenses to the class representative will preclude typicality if "there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." Id. (quoting Hanon, 976 F.2d at 508).

Here, Immigrant Plaintiffs are individuals detained at the Facilities who assert irreparable harm will arise from Defendants' transfer determinations. (Compl. ¶¶ 8-26, 87.) The Immigrant Plaintiffs also advance the same legal arguments as the proposed class. (Id. ¶¶ 92-119.) Finally, Immigrant Plaintiffs assert their threatened harm is the same as the proposed class: transfer to detention facilities far from their attorneys and/or their immediate family members. (Id. ¶¶ 57-77.) Defendants do not argue the typicality requirement is not satisfied here. The Court therefore finds Immigrant Plaintiffs are typical of the proposed class and sub-classes.

### d. Adequacy

In determining whether a proposed class representative will adequately protect the interests of the class, the court asks whether the proposed class representatives and their counsel have any conflicts of interest with any class members and whether the proposed class representatives and their counsel will prosecute the action vigorously on behalf of the class. Hanlon, 150 F.3d at 1020.

Here, Immigrant Plaintiffs do not have a conflict with the proposed class, as they have the same alleged injuries and seek the same relief. (Certification Mot. at 6-7.) Additionally, the Court finds Immigrant Plaintiffs will vigorously prosecute the action, as they have each already submitted evidence supporting their PI Motion. (See Enabi Decl.; Njualem Decl.; Wabare Decl.; Sac Decl.; Queenida Decl.; Guevara-Melgar Decl.; Moreno Decl.; Awungdeu Decl.; Arroyo Decl.; Blea Decl.) Immigrant Plaintiffs also have a strong interest in securing continued assistance from their attorneys and/or immediately family. Additionally, Plaintiffs' counsel, the American Civil Liberties Union Foundation of Southern California ("ACLU SoCal") has extensive experience litigating immigrants' rights class actions. (Ahmed Decl. ¶¶ 3-4.) Defendants do not argue Immigrant Plaintiffs will not adequately protect the interests of the class. Accordingly, the Court finds the adequacy requirement is satisfied.

### 4. Rule 23(b) Requirements

Immigrant Plaintiffs seeks to certify their proposed sub-class under Rule 23(b)(2). (Certification Mot. at 7-8.) Rule 23(b)(2) permits certification of a class seeking declaratory or injunctive relief where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is

appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). In the Ninth Circuit, "[i]t is sufficient to meet the requirements of Rule 23(b)(2) [when] class members complain of a pattern or practice that is generally applicable to the class as a whole." Rodriguez I, 591 F.3d at 1125 (9th Cir. 2010) (internal citation and quotation marks omitted) (finding certification under Rule 23(b)(2) proper where "proposed members of the class each challenge Respondents' practice of prolonged detention of detainees without providing a bond hearing and seek as relief a bond hearing with the burden placed on the government"). Thus, the critical inquiry is "whether class members seek uniform relief from a practice applicable to all of them." Rodriguez I, 591 F.3d at 1125.

Here, represented Immigrant Plaintiffs challenge potential transfers outside the AOR threatening the entire proposed sub-class. Such transfers, if unlawful, subject the sub-class members to violation of their rights under the Due Process Clause and the INA. Furthermore, represented Immigrant Plaintiffs seek uniform relief: injunction against transfer outside the AOR. (PI Mot. at 25-26.) Thus, Rule 23(b)(2)'s requirements are therefore satisfied here. See Rodriguez I, 591 F.3d at 1125; Parsons v. Ryan, 754 F.3d 657, 689 (9th Cir. 2014) (Rule 23(b)(2) satisfied where state department of corrections established policies and practices that placed "every inmate in custody in peril" and all class members sought essentially the same injunctive relief). For purposes of this inquiry, "[t]he fact that some class members may have suffered no injury or different injuries from the challenged practice does not prevent the class from meeting the requirements of Rule 23(b)(2)." Id. Here, a single injunction would provide relief to each class member. See Wal-Mart, 564 U.S. at 360

Defendants argue Plaintiffs do not satisfy the requirements of Rule 23(b)(2) because they do not establish that each represented Immigrant Plaintiff will be transferred outside the AOR. (Certification Opp'n at 13.) Defendants point to the available bed space at Adelanto and their preliminary efforts to reduce the population at the Facilities. (Id.) The Court is not persuaded that represented Immigrant Plaintiffs fail to satisfy Rule 23(b)(2) simply because each and every sub-class member may not be transferred outside the AOR. It is abundantly clear that many immigrants detained at the Facilities who have local family or local counsel will be transferred outside the AOR. At the June 10, 2019 hearing, Defendants represented that as of June 6, 2019, there are approximately 240 available spaces at Adelanto but approximately 330 immigrants detained at the Facilities with either counsel or immediate family within the AOR. Accordingly, each sub-class member is imminently threatened with transfer outside the AOR. The Court finds that given the lack of space at Adelanto, Plaintiffs have established a likelihood that they will each be transferred outside the AOR and, therefore, separated from their retained counsel. This likelihood is sufficient to establish the imminent threat that ICE will "act on grounds that apply generally to the class[.]" See Fed. R. Civ. P. 23(b)(2).[5] Accordingly, the Court concludes Rule 23(b)(2)'s requirements are satisfied.

---

[5] The Court notes this finding is not inconsistent with the Court's finding that Plaintiffs' have not established ICE is likely to violate ICE Policy 11022.1. See infra Part III.B.1.c.ii. The Court notes it is entirely plausible that ICE will determine transfer of each represented

## B.   Preliminary Injunction

The Court finds that represented Immigrant Plaintiffs raise serious questions as to the merits of their Due Process and INA claims.  However, as to the remainder of the claims before the Court, Plaintiffs fail to establish either a likelihood of success or serious questions on the merits.

### 1.   Success on the Merits or Serious Questions

#### a.   Due Process and INA Claims

##### i.   Jurisdiction

As to Immigrant Plaintiffs' Due Process and INA claims, the Court has jurisdiction to hear the claims of represented Immigrant Plaintiffs but not to hear the claims of unrepresented Immigrant Plaintiffs.  The Due Process and INA claims concern Immigrant Plaintiffs' rights to maintain their established attorney-client relationships and to a full and fair hearing in their removal cases.  (See Compl. ¶¶ 92-105; see also, PI Mot. at 1, 6, 13-18.)  Specifically, Immigrant Plaintiffs allege geographic separation from their counsel and/or immediately family violates these rights.  (See Compl. ¶¶ 92-105; see also, PI Mot. at 13-18.)  The Court finds the claims of represented Immigrant Plaintiffs are independent of the removal proceedings such that the Court may hear the claims.  However, the Court finds the claims of unrepresented Immigrant Plaintiffs inextricably linked to the administrative process which may—or may not—result in a final order of removal for which review is exclusively available through petition for review to the Ninth Circuit.

Section 1252(a)(5) is entitled "Exclusive means of review" and provides that "a petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of an order of removal[.]"  8 U.S.C. § 1252(a)(5).  Section 1252(b)(9) establishes the scope of judicial review, instructing that "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States . . . shall be available only in judicial review of a final order[.]"  Id. § 1252(b)(9).  This provision is referred to as a "zipper clause," in that it consolidates review of immigration proceedings into a single action in a court of appeals.  J.E.F.M. v. Lynch, 837 F.3d 1026, 1031-32 (9th Cir. 2016) (citing AADC, 525 U.S. at 483; INS v. St. Cyr, 533 U.S. 289, 313 & n.7 (2001)).  The Ninth Circuit explained that the zipper clause is "breathtaking" in its scope and "vise-like" in its grip, swallowing most claims tied to removal proceedings.  Id. at 1031 (quoting Aguilar v. ICE, 510 F.3d 1, 9 (1st Cir. 2007)).  But the zipper clause channels only those questions "arising from"

---

Immigrant Plaintiff is "necessary" in light of the limited space at Adelanto, therefore acting on grounds generally applicable to the sub-class.

actions taken or proceedings brought to remove an immigrant, therefore excluding from its reach claims that are independent of, or collateral to, the removal process. Id. at 1032.

In J.E.F.M., immigrant minors in removal proceedings brought a class action asserting violation of their Due Process right to counsel and their INA statutory right to appointed counsel at the government's expense. Id. at 1029. The minors explained that if a district court could not hear their right-to-counsel claims, they would be denied meaningful review of those claims. Id. at 1030. The Ninth Circuit rejected these arguments, finding the right-to-counsel claims "must be raised through the PFR process because they 'arise from' removal proceedings." Id. at 1032-33. The Ninth Circuit further held the minors' right to counsel claims were not independent of or collateral to their removal proceedings, but instead "these claims [were] bound up in and an inextricable part of the administrative process." Id. at 1033. Specifically, the Ninth Circuit found that "'[b]y any realistic measure, the alien's right to counsel is part and parcel of the removal proceeding itself . . . [A]n alien's right to counsel possesses a direct link to, and is inextricably intertwined with, the administrative process[.]'" Id. (quoting Aguilar, 510 F.3d at 13).

Here, although represented Immigrant Plaintiffs' claims arise from right-to-counsel arguments, this case is distinguishable. In J.E.F.M., the immigrant minors were unrepresented and seeking appointment of counsel at the government's expense. Id. at 1029-1030. Here, represented Immigrant Plaintiffs already have established attorney-client relationships. (PI Mot. at 13-16.) A court in the Northern District of California considering this issue determined that such claims were included within the zipper clause's reach. See Alvarez v. Sessions, 338 F. Supp. 3d 1042, 1048-1049 (N.D. Cal. 2018). The court in Alvarez considered the precise issue as to represented immigrants. See id. There, petitioners alleged transfers outside the San Francisco AOR violated their right to counsel by "destroying their established relationship with their attorney[.]" Id. at 1048. The Alvarez court read J.E.F.M. expansively, finding all claims based on violations of the right to counsel during removal proceedings are included in the reach zipper clause's reach. Id. The court went on to find that disruption to established counsel relationships—rather than denial of representation—was a distinction without a difference because the claim "still arises under the Fifth Amendment, as did the minors' rights in J.E.F.M.[.]" Id. at 1048-49. It concluded that harm to the attorney-client relationship was still "unquestionably" bound up in and an inextricable part of the administrative process. Id. at 1049.

This Court is not similarly persuaded that represented Immigrant Plaintiffs' Due Process and INA claims are inextricably tied to their removal proceedings. Importantly, this Court finds that the nature of right violated guides the jurisdictional inquiry rather than the source of the right. In Jennings v. Rodriguez, 138 S. Ct. 830, 840 (2018), Justice Alito instructed that the starting point for this jurisdictional analysis is to determine whether the legal questions a court must decide "arises from" actions taken to remove an immigrant. Id. at 840. Here, the right-to-counsel claims presented contend an immigrant who has already retained counsel enjoys the right not to have that relationship unduly burdened or interfered with. See infra Part III.B.1.a.ii. Represented Immigrant Plaintiffs allege violations to their Due Process and INA rights arising from interference with their established attorney-client relationship which "will harm their legal

representation[.]" (PI Reply at 9.) Thus, represented Immigrant Plaintiffs assert harm that accrues by conduct imposing significant burden on the attorney-client relationship without looking to the effect of that burden on the underlying removal proceedings. (Id. at 8-9 (citing cases) (arguing a "[s]ignificant burden on the counsel relationship itself constitutes a legal injury).) In other words, represented Immigrant Plaintiffs argue that an established attorney-client relationship carries with it certain rights separate from and additional to their rights in removal proceedings. The Court considers whether represented Immigrant Plaintiffs are likely to succeed on that claim below in Part III.B.1.a.ii. But for purposes of the jurisdictional inquiry, it is enough that represented Immigrant Plaintiffs assert harm which accrues at the moment of geographic separation, rather than in reference to the fairness of their underlying removal proceedings. As such, represented Immigrant Plaintiffs allege a harm quite different from the minors in J.E.F.M.. They allege a harm to a protected relationship that the J.E.F.M. minors did not have. Accordingly, the Court finds represented Immigrant Plaintiffs allege an injury to their established counsel relationship that is independent of and collateral to their removal proceedings. These claims are beyond the reach of the zipper clause.

But the Court finds unrepresented Immigrant Plaintiffs' Due Process and INA claims do not present injuries independent of or collateral to the underlying fairness of their removal process. As such, the claims of represented Immigrant Plaintiffs are analogous to the minors in J.E.F.M. for purposes of the jurisdictional analysis. Unrepresented Immigrant Plaintiffs frame their Due Process and INA claims as implicating their constitutional and statutory rights to present evidence on their behalf and to a full and fair hearing on their claims. (See PI Mot. at 16-18.) They also argue that separation from their immediate family restricts their ability to obtain counsel. (Id.) But unrepresented Immigrant Plaintiffs provide no argument that these rights can be violated without reference to the underlying fairness of the removal process. Accordingly, the Court finds the Due Process and INA claims of unrepresented Immigrant Plaintiffs "possess[] a direct link to, and [are] inextricably intertwined with, the administrative process[.]" 837 F.3d at 1033 (citation omitted).

The Alavarez court considered the Due Process claim as to represented plaintiffs, and reached the same conclusion. See Alvarez, 338 F. Supp. at 1048-1049. Plaintiffs argue the reasoning in Alvarez is incorrect. (PI Reply at 2-3.) They also argue this action is distinguishable from Alvarez. (Id.) As addressed above, the Court agrees that Alvarez is incorrect as to the claims of represented Immigrant Plaintiffs. However, the Court finds the reasoning from Alvarez persuasive as to the claims of unrepresented Immigrant Plaintiffs.

First, Plaintiffs stress this action does not concern venue, but only location of detention. (Id. at 2-3.) They argue this is significant because an Immigration Judge ("IJ") may order a change in venue, but the place of detention is entrusted to the sound discretion of ICE. (Id. at 2 (citing Matter of Rahman, 20 I&N Dec. 480, 482-83, 484 n.4 (1992)).) Plaintiffs also note that, unlike in Alvarez where plaintiffs sued the Attorney General, they sue ICE—the agency with the ability to determine their detention location. (Id. at 3.) Accordingly, Plaintiffs argue determinations as to the location of their detention are unreviewable by an IJ, rendering the determination collateral to any final order of removal. (Id. at 3.) The Court is not persuaded by

this argument. Here, unrepresented Immigrant Plaintiffs' own briefing explains that their geographic separation from immediate family is significant insofar as it threatens their right to a full and fair hearing on their claims for relief. (PI Mot. at 16-18.) Thus, they do not argue a transfer of detention location is a per se harm under the Due Process Clause or the INA. Accordingly, the distinction between change of detention location versus transfer of venue is not meaningful when determining the jurisdictional scope of the zipper clause.

Furthermore, reviewability by an IJ is not the standard as to whether an action is unreviewable. In <u>J.E.F.M.</u>, the Ninth Circuit noted that the minors' "right-to-counsel claim [was] teed up for appellate review. It is true that . . . neither the [IJ] nor the [BIA] ha[d] authority to order court-appointed counsel." 837 F.3d at 1038. The Ninth Circuit continued that even if such issue was not raised in the proceedings below, the court of appeals has authority to consider the issue because it falls within a narrow exceptions for "constitutional challenges that are not within the competence of administrative agencies to decide" and for arguments that are "so entirely foreclosed . . . that no remedies [are] available as of right" from the agency. <u>Id.</u> (quoting <u>Barron v. Ashcroft</u>, 358 F.3d 674, 678 (9th Cir. 2004); <u>Alvarado v. Holder</u>, 759 F.3d 1121, 1128 (9th Cir. 2014)). The Ninth Circuit expressly acknowledged that the requested class-wide remedy would be more efficient than requiring each petitioner to file an after-the-fact PFR but explained this is not a ground to ignore the reach of the zipper clause. <u>Id.</u> Thus, implicit in <u>J.E.F.M.</u> is a finding that the IJ or BIA's lack of authority to provide the requested relief is not a circumstance precluding meaningful review. In other words, through a PFR, the Ninth Circuit may review the <u>effect</u> of a transfer outside the AOR on the fairness of an unrepresented Immigrant Plaintiff's removal proceedings. This is consistent with the idea that transfers of detention location are not free-standing legal harms, but instead one way in which removal proceedings may be rendered inadequate under the Due Process Clause or the INA.

Plaintiffs further argue that even if this Court accepts the rationale in <u>Alvarez</u>, this action is different because they name DHS Defendants rather than Department of Justice defendants. The Court does not find this distinction meaningful for purposes of the jurisdictional analysis. The legal harm unrepresented Immigrant Plaintiffs assert, regardless of Defendants named, is inextricably linked to the fairness of their removal proceedings. Plaintiffs cannot evade the zipper clause by substituting DHS employees for DOJ employees. Thus, the reasoning in <u>Alvarez</u> is not faulty as to the Due Process and INA claims of unrepresented Immigrant Plaintiffs.[6]

Finally, Plaintiffs argue the Supreme Court's interpretation of § 1252(a)(5) and (b)(9) in <u>Rodriguez</u>, 138 S. Ct. 830, precludes application of the zipper clause to claims that are too remote from the removal proceeding or would lead to absurd conclusions. (PI Reply at 2-3.) They argue

---

[6] Plaintiffs also argue two other district courts have rejected the jurisdictional argument Defendants advance here and the <u>Alvarez</u> court adopted. (PI Reply at 3 n.3. (citing <u>Rodriguez-Castillo v. Nielsen</u>, 18-cv-01317-ODW (C.D. Cal. June 21, 2018); <u>Innovation Law Lab v. Nielsen</u>, 342 F. Supp. 3d 1067 (D. Or. 2018) ("<u>ILL</u>").) However, this argument is specific to the represented Immigrant Plaintiffs. (<u>Id.</u>) The Court need not address the arguments as to unrepresented Immigrant Plaintiffs.

their claims in this action are precisely the type of remote claims the <u>Rodriguez</u> Court contemplated and that applying the zipper clause would lead to absurd conclusions. (<u>Id.</u>) The Court is not persuaded that <u>Rodriguez</u> changes the application of <u>J.E.F.M.</u> to the jurisdictional analysis for unrepresented Immigrant Plaintiffs.

Immigrant Plaintiffs' argument rests on Justice Alito's opinion. (PI Mot. at 2-3.) Chief Justice Roberts and Justice Kennedy joined Justice Alito's jurisdictional opinion. <u>See</u> <u>Rodriguez</u>, 138 S. Ct. 830. Justice Alito instructed that the starting point for this jurisdictional analysis is to determine whether the legal questions a court must decide "aris[e] from" actions taken to remove an immigrant. <u>Id.</u> at 840. He continued that although an immigrant may suffer legal harms traceable to his detention, e.g., if he is assaulted by a guard or fellow detainee, those harms do not present legal questions arising from actions taken to remove him. <u>Id.</u> Justice Alito noted that "cramming judicial review of those questions into the review of final removal orders would be absurd." <u>Id.</u> In other words, Justice Alito found that claims independent of the removal process are beyond the zipper clause's reach. Justice Alito further noted that an over-expansive interpretation of "arising from" would make claims of prolonged detention unreviewable, as an over-long detention would have already occurred by the time an immigrant receives a final order of removal. <u>Id.</u> It would also be unreviewable as to an immigrant who receives relief from removal. <u>Id.</u> Accordingly, Justice Alito rejected "uncritical literalism" in interpreting the zipper clause. <u>Id.</u> at 841-42 (citations omitted). Justice Alito explained that the <u>Rodriguez</u> plaintiffs were not challenging the decision to detain them in the first place or to seek removal. <u>Id.</u> at 842. He further noted they were "not even challenging any part of the process by which their removability will be determined." <u>Id.</u> For these reasons, Justice Alito concluded that the zipper clause did not preclude review of whether detained immigrants hold a right to periodic bond hearings under the INA. <u>See id.</u>

Based on Justice Alito's opinion in <u>Rodriguez</u>, unrepresented Immigrant Plaintiffs assert their Due Process and INA claims are too remote from the removal process to be included in the zipper clause and that applying the zipper clause to their claims would render them effectively unreviewable. (PI Mot. at 2-3.) First, the Court finds unrepresented Immigrant Plaintiffs' claims are not too remote from the removal process such that review through the PFR process would be absurd or constitute "cramming judicial review of those questions into review of the final removal orders[.]" <u>See</u> <u>Rodriguez</u>, 138 S. Ct. at 840. As Justice Alito's opinion directs, this inquiry starts with the <u>legal question</u> presented. <u>Rodriguez</u>, 138 S. Ct. at 840. As addressed above, unrepresented Immigrant Plaintiffs' Due Process and INA claims are rooted in the effect of a transfer outside the AOR on the underlying fairness of removal proceedings. Thus, the Court "need not employ an expansive interpretation of § 1252(b)(9)'s 'arising from' language" to find that unrepresented Immigrant Plaintiffs' Due Process and INA claims "fall squarely within the purview of that provision." <u>See</u> <u>Alvarez</u>, 338 F. Supp. 3d at 1049 (citing <u>J.E.F.M.</u>, 837 F.3d at 1033). Immigrant Plaintiffs' legal claims directly target the fairness of their removal process. Thus, unlike the <u>Rodriguez</u> plaintiffs, unrepresented Immigrant Plaintiffs challenge "part of the process by which their removability will be determined." <u>See</u> <u>Rodriguez</u>, 138 S. Ct. at 842.

Second, as addressed above, unrepresented Immigrant Plaintiffs' legal claims are not effectively unreviewable. Unrepresented Immigrant Plaintiffs' allege their geographic separation from immediate family renders their removal proceedings fundamentally unfair. Through a petition for review, the Ninth Circuit may consider whether an immigrant with a final order of removal received a full and fair hearing and was able to present evidence in support of his or her claims. See, e.g., Colmenar v. I.N.S., 210 F.3d 967, 968 (9th Cir. 2000). The Ninth Circuit has also held that effective review may be available even when the IJ and BIA cannot grant the requested relief. See J.E.F.M., 837 F.3d at 1038. Accordingly, the Court finds that Rodriguez does not narrow J.E.F.M. such that the Court has jurisdiction as to unrepresented Immigrant Plaintiffs' Due Process and INA claims. In other words, unrepresented Immigrant Plaintiffs fail to frame their Due Process and INA claims such that the legal questions this Court must consider are not inextricably tied to the process by which their removability will be determined.

The Court acknowledges some named plaintiffs, and likely many immigrants detained at the Facilities, face proceedings that are likely not included within this jurisdictional bar and related zipper clause. For example, Plaintiffs Sac and Moreno each already have a final order of removal. (Compl. ¶¶ 2, 14) Immigrants in such a procedural posture are beyond the reach of the zipper clause. See, e.g., Singh v. Gonzales, 499 F.3d 969, 979 (9th Cir. 2007) (holding district court had jurisdiction over ineffective assistance of counsel claim arising after a final order of removal and barring jurisdiction for a different ineffective assistance of counsel claim arising before a final order of removal was entered). Plaintiff Guevara-Melgar has an up-coming bond hearing for which he has local representation. (Compl. ¶ 17.) Per Rodriguez, due process concerns arising from the bond determination process are not precluded by § 1252(a)(5) and (b)(9). See Rodriguez, 138 S. Ct. at 840. The Court also acknowledges that habeas actions brought by immigrants challenging the length of their detention are likely not barred by § 1252(a)(5) and (b)(9). See Nadarajah, 443 F.3d at 1075-76. Thus, unrepresented Immigrant Plaintiffs who are in positions analogous to Plaintiffs Sac, Moreno, and Guevara-Melgar or to the plaintiff in Nadarajah would not be included in the zipper clause's reach, as their Due Process and INA claims concern issues independent of and/or collateral to the administrative process.

However, the requested injunctive relief reaches beyond these types of collateral claims to include claims of detained immigrants properly channeled to PFR review through the zipper clause. For example, Plaintiff Blea's claims appear to be included by the zipper clause. On March 28, 2019, an IJ denied Plaintiff Blea's asylum claim and granted him voluntary departure. (Compl. ¶ 16.) Plaintiff Blea intends to appeal the IJ's determination to the BIA, hopefully with the assistance of his immediate family who reside within the AOR. (Id.) Plaintiff Blea is the only named plaintiff who is currently unrepresented. (Id. ¶¶ 8-26.) Plaintiff Blea's claim is indicative of the overbreadth of the requested injunctive relief as to unrepresented Immigrant Plaintiffs. Furthermore, the Court has no information as to the stage of proceedings for other unrepresented immigrants detained at the Facilities who have immediate family in the AOR. Based on the evidence and arguments presented, the Court finds it does not have jurisdiction to grant the requested injunctive relief as to unrepresented Immigrant Plaintiffs because the proposed sub-class includes claims properly channeled through the zipper clause. The Court will grant Plaintiffs leave to amend their Complaint in order to add claims and/or sub-classes that

cure this overbreadth.  The Court further notes it is amenable to granting limited discovery in order to facilitate such an amendment and a second motion for preliminary injunction.

For these reasons, the Court finds it has jurisdiction as to the Due Process and INA claims of represented Immigrant Plaintiffs.  However, the Court does not have jurisdiction over the Due Process and INA claims as to the entire breadth of the proposed sub-class of unrepresented Immigrant Plaintiffs with immediate family in the AOR.  Consequently, the Court cannot reach the merits of unrepresented Immigrant Plaintiffs' Due Process and INA claims.[7]

### ii.  Merits

Represented Immigrant Plaintiffs have established a likelihood of success on the merits of, or at least a serious question as to, their Due Process and INA claims.  The Court acknowledges DHS has broad discretion in determining an immigrant's location of detention.  See Matter of Rahman, 20 I&N Dec. at 482-83, 484 n.4; Comm. of Cent. Am. Refugees v. INS, 795 F.2d 1434, 1440 (9th Cir. 1985), amended, 807 F.2d 769 (9th Cir. 1986) ("CCAR").  However, this discretion likely does not permit "the transfer of aliens [which] would interfere with an existing attorney-client relationship."  CCAR, 795 F.2d 1441.

The INA provides that "[i]n any removal proceedings before an immigration judge and in any appeal proceedings before the Attorney General from any such removal proceedings, the person concerned shall have the privilege of being represented (at no expense to the Government) by such counsel, authorized to practice in such proceedings, as he shall choose."  8 U.S.C. § 1362.  The Due Process Clause also guarantees that immigrants have the right to be represented by counsel of their choosing.  See Baltazar-Alcazar v. I.N.S., 386 F.3d 940, 944 (9th Cir. 2004) (citing Tawadrus v. Ashcroft, 364 F.3d 1099, 1103 (9th Cir. 2004); Colindres-Aguilar v. INS, 819 F.2d 259, 261 n.1 (9th Cir. 1987) (noting an immigrant's right to counsel is a statutory right under 8 U.S.C. § 1362 as well as a right protected by the Due Process Clause)).  The Ninth Circuit characterizes this right as "fundamental" and has warned immigration officials that the right "'must be respected in substance as well as in name.'"  Orantes-Hernandez v. Thornburgh, 919 F.2d 549, 554 (9th Cir. 1990) (quoting Baires v. INS, 856 F.2d 89, 91 n.2 (9th Cir. 1988)).  Thus, the right to counsel contains the related right to consult with counsel.  Id. at 564.

Defendants argue Plaintiffs can only prevail on their Due Process claim if depriving him of the right to counsel results in a fundamentally unfair immigration hearing that prejudices the outcome.  (See PI Opp'n at 13-14 (citing Lara-Torres v. Gonzales, 404 F.3d 1105 (9th Cir.

---

[7] The Court notes this analysis does not apply to Attorney Plaintiffs' First Amendment claims, as their rights are not connected to removal orders entered against their clients.  See infra Part III.B.2.  The analysis also does not apply to Immigrant Plaintiffs' APA claim, as any violation is not inextricably linked to the outcome of removal proceedings.  See infra Part III.B.3.  Parties did not provide substantive discussion of Immigrant Plaintiffs' First Amendment claim or its relation to the jurisdictional provisions discussed here.  See infra Part III.B.2.  Accordingly, the Court does not consider whether the jurisdictional bar and zipper clause includes that claim.

2005).)  Thus, they argue represented Immigrant Plaintiffs cannot show any due process violations because they "provide no concrete examples of how transfer has negatively affected the outcome of their immigrations proceedings." (Id. at 14.)  However, unlike in Lara-Torres, represented Immigrant Plaintiffs do not challenge the performance of their retained counsel but instead challenge threatened action that will effectively destroy their already-existing counsel relationships.  Furthermore, the Court notes an already-accrued deprivation is not required for securing injunctive relief.  For example, the Ninth Circuit in CCAR suggested that a significant burden on the attorney-client relationship, without a showing of underlying prejudice to the removal proceedings, may be sufficient to establish a legal injury sufficient to justify injunctive relief.  See CCAR, 795 F.2d at 1439.  Represented Immigrant Plaintiffs present ample evidence of the harm to their legal relationships that would arise from transfers outside the AOR.  For example, retained counsel lack resources to represent immigrants outside the AOR and represented Immigrant Plaintiffs are unable to afford counsel in other jurisdictions.  (See Glicken Decl. ¶¶ 4-5, 8, 11, 13; Inlender Decl. ¶¶ 8, 9(d); Arroyo Decl. ¶ 3; Sac Decl. ¶ 7; Guevara-Melgar Decl. ¶ 2; Wabare Decl. ¶ 2; Queenida Decl. ¶ 2; Enabi Decl. ¶ 2.)  Furthermore, Plaintiffs provide evidence that transfer to the San Francisco AOR is likely.  (Ex. 3; Cuy Decl. ¶ 4-5.)  A court in the Northern District of California has recently found a significant impact on detainees' ability to communicate with counsel due to "the nature and breadth of the systemic phone restrictions[.]"  Lyon v. ICE, 171 F. Supp. 3d 961, 983 (N.D. Cal. 2016).  However, even if telephone access were available, a healthy counsel relationship in the immigration context requires confidential in-person visitation, especially where an immigrant must be forthcoming about sensitive matters such as past trauma, mental health issues, and criminal history.  (See, e.g., Glicken Decl. ¶¶ 11, 13; Sac Decl. ¶ 8; Inlender Decl. ¶ 9(d); Moreno Decl. ¶ 6; Arroyo Decl. ¶ 5; Guevara-Melgar Decl. ¶ 4; Wabare Decl. ¶ 4; Queenida Decl. ¶ 4; Enabi Decl. ¶ 4.)

    In CCAR, the Ninth Circuit affirmed a district court's denial of a preliminary injunction to unrepresented immigrants challenging impending transfers because the transfer would "not interfere with existing attorney-client relationships." Id. at 1439-40.  In reaching its decision, the Ninth Circuit discussed a series of cases in which district courts preliminarily enjoined transfers of immigrants away from their retained counsel.  Id. at 1438-39 (citing Bocanegra-Leos v. Dahlin, No. 78-313 (D. Or. Apr. 7, 1978); Chavez-Galen v. Turnage, No. 80-485T (W.D. Wash. Feb. 3, 1981)).  The Ninth Circuit found it critical that the impending transfers would interfere with or destroy on-going attorney-client relationships.  Id.  Thus, the Ninth Circuit suggests a destruction of, or significant burden on, the counsel relationship is itself a legal harm.  Here, represented Immigrant Plaintiffs have previously retained counsel, making their claims more consistent with the cases CCAR cites approvingly.

    Additional Ninth Circuit precedent suggests transferring represented Immigrant Plaintiffs outside the AOR of their retained counsel impermissibly interferes with the counsel relationship.  See Orantes-Hernandez v. Meese, 658 F. Supp. 1488, 1509 (C.D. Cal. 1988) (government practices that "unjustifiably obstruct" immigrants' "statutory and due process rights to retain counsel of their choice" must be invalidated), aff'd Orantes, 919 F.3d at 564 (affirming injunction restricting transfers because they "interfere[d] with established attorney-client relationships").  Defendants offer two counter-arguments, both of which the Court finds

unpersuasive. Defendants argue the injunction in <u>Orantes</u> did not preclude transfer of represented immigrants outside the AOR, but instead provided that venue shall remain where retained counsel is located and that the immigrant must be re-transferred to that location with reasonable time to consult with counsel before any proceeding. (PI Opp'n at 14-15 (citing <u>Orantes</u>, 685 F. Supp. at 1513).) However, this action is squarely within the <u>Orantes</u> prohibition. At the June 10, 2019 hearing, Defendants explained that once an immigrant is transferred outside an AOR, ICE will move to change venue accordingly. This directly contradicts the prohibition in <u>Orantes</u>. <u>See</u> 685 F. Supp. 1513. Furthermore, the Court finds that even if ICE does not seek changes in venue, developments in the immigration landscape raise serious questions as to whether <u>Orantes</u> should be expanded to preclude transfers of detention location for represented immigrants. For example, many sub-class members are currently litigating parallel state court actions or filing petitions to United States Citizen and Immigrations Services. (<u>See</u> Sac Decl. ¶ 7; Glicken Suppl. Decl. ¶ 9.) These efforts require continued and on-going visitation with counsel even when an IJ hearing is months in the future. (<u>See, e.g.</u>, Inlender Suppl. Decl. ¶ 6; Glicken Decl. ¶ 9.) Thus, the on-going need for counsel contact presents circumstances not considered in <u>Orantes</u> and raises serious questions as to its reach.

Defendants also contend the <u>Orantes</u> court found interference with the attorney-client relationship because of the transfer away from counsel as well as limited attorney visitation hours, a dearth of potential counsel at their new location, inadequate efforts to secure privacy during counsel visits, and inadequate notice of counsel arrival. (PI Mot. at 15 (<u>Orantes</u>, 919 F.2d at 565-66).) Here, Plaintiffs provide evidence of barriers to adequate phone and mail access impeding timely communication of even the most basic information. (<u>See</u> Glicken Decl. ¶ 11; Inlender Decl. ¶ 9(d).) Furthermore, represented Immigrant Plaintiffs explain they are unable to afford counsel should they be transferred. (<u>See</u> Arroyo Decl. ¶ 3; Sac Decl. ¶ 7; Guevara-Melgar Decl. ¶ 2; Wabare Decl. ¶ 2; Queenida Decl. ¶ 2; Enabi Decl. ¶ 2.) And, as noted above, the Court has concerns about phone access in the San Francisco AOR. <u>See</u> <u>Lyon</u>, 171 F. Supp. 3d at 983. The Court further notes that <u>Orantes</u> arises in the context of a permanent injunction, after discovery and a full opportunity to develop factual support. Here, the Court considers a motion for preliminary relief. The Court finds that, at this stage, represented Immigrant Plaintiffs' evidence sufficiently supports a finding that transfer outside the AOR and conditions at potential transfer facilities render it likely that represented Immigrant Plaintiffs will—after the benefit of full discovery—succeed on the merits of their claims.

Finally, Defendants offer three additional arguments as to why represented Immigrant Plaintiffs are not likely to succeed on the merits of their Due Process and INA claims. None of these arguments are persuasive. First, Defendants note that due process requires the Court to consider the burden on the government of the additional procedural and administrative burdens represented Immigrant Plaintiffs request. (PI Opp'n at 16 (citing <u>Mathews v. Eldridge</u>, 424 U.S. 319, 334-35 (1976).) Defendants assert closure of the Facilities leaves them without enough space to house the immigrant population currently detained in the AOR. (<u>Id.</u>) This is true. At the hearing Defendants explained there are approximately 240 spaces available at Adelanto and that there are approximately 330 individuals detained at the Facilities who either have counsel or immediate family in the AOR. However, in this Order, the Court only grants relief to the

represented Immigrant Plaintiffs. Plaintiffs estimate this sub-class includes approximately 75 individuals, substantially fewer than the available Adelanto spaces. See supra Part III.A.3.a. Thus, the Court finds there is no countervailing governmental burden counseling against granting this limited relief.

Second, Defendants contend that even in the criminal defense context the Due Process Clause does not restrict the government's authority to transfer inmates. (PI Opp'n at 16-17.) However, the cases on which Defendants rely do not support such a contention. In Grayson v. Rison, 945 F.2d 1064, 1067 (9th Cir. 1991), the Ninth Circuit noted the "Due Process Clause imposes few restrictions" on prison officials' authority to transfer inmates. In other words, Grayson acknowledges there are due process constraints on transfers. Defendants cite Meachum v. Fano, 427 U.S. 215, 224-25 (1976), for the proposition that there is no due process violation in placing an inmate at a particular prison. (PI Opp'n at 17.) However, the Meachum Court considered transfer to a higher security prison with less favorable conditions. Meachum, 427 U.S. at 216. It did not consider transfer in the context of its effect on the attorney-client relationship. Finally, Defendants cite Olim v. Wakinekona, 461 U.S. 238, 245 n.6 (1983), for the proposition that even interstate transfer does not violate due process. (PI Opp'n at 17.) The Wakinekona Court, however, considered transfers in detention for inmates who had already been convicted and sentenced. Wakinekona, 461 U.S. at 245. It did not consider claims that interstate transfer violated the right to counsel. Thus, Defendants' authority is inapposite.

Third, Defendants argue the anticipated costs imposed by an injunction against transferring represented Immigrant Plaintiffs outside the AOR would incur "Government expense," rendering the asserted rights "outside the limited provision at 8 U.S.C. § 1362." (PI Opp'n at 14, 16.) This argument is frivolous. Section 1362 clearly means the government will not be required to pay the fees of counsel an immigrant retains for her removal proceedings. It does not operate to deny access to counsel for detained immigrants when—by nature of their government-imposed detention—they require certain accommodations to exercise their constitutionally protected right to consult with their attorney.

For these reasons, the Court finds represented Immigrant Plaintiffs are likely to succeed on, or at least present serious questions as to, the merits of their Due Process and INA claims.

**b. First Amendment Claims**

Plaintiffs assert they are likely to succeed on the merits of their First Amendment claims. (PI Mot. at 18-20.)

As to the Immigrant Plaintiffs' First Amendment claims, they assert they retain First Amendment rights even while they are detained. (Id. at 18-19.) They further note that prisoners retain the right to petition the government for redress of grievances, which includes a reasonable right of access to the courts. (Id. at 19 n.13 (citing Hudson v. Palmer, 468 U.S. 517, 523 (1984).) This is the entire extent of the discussion concerning Immigrant Plaintiffs' First Amendment claim. The PI Motion provides no discussion of this right, how it relates to civil detention, or

how a transfer outside the AOR violates the right.  Plaintiffs similarly provide no discussion of Immigrant Plaintiffs' First Amendment claim in their PI Reply.  Accordingly, Immigrant Plaintiffs do not carry their burden to establish they are likely to succeed on the merits of this claim.

Attorney Plaintiffs also fail to establish they are likely to succeed on the merits of their First Amendment claim.  Attorney Plaintiffs argue the First Amendment protects an attorney's right to speak with and advise her clients, including incarcerated clients.  (Id. at 19 (citing NAACP v. Button, 371 U.S. 415 (1963); United Transp. Union v. State Bar of Mich., 401 U.S. 576, 585-86 (1971); Holder v. Humanitarian Law Project, 561 U.S. 1, 27-28, 38 (2010); Legal Servs. Corp. v. Velazquez, 531 U.S. 533, 547 (2001); In re Primus, 436 U.S. 412, 414, 423-24 (1978)).)  They argue any restriction implicates profound First Amendment interests that only a compelling state interest can justify.  (Id. (citing Button, 371 U.S. at 438.)

A content-based restriction on speech is only justified if the government proves the restriction is narrowly tailored to serve a compelling state interest.  Reed v. Town of Gilbert, Ariz., 135 S. Ct. 2218, 2226 (2015) (citations omitted).  "Government regulation of speech is content-based if a law applies to particular speech because of the topic discussed or the idea or message expressed."  Id. at 2227 (citing Sorrell v. IMS Health, Inc., 131 S. Ct. 2653, 2663-2664 (2011)).  Laws which appear content-neutral but "cannot be justified without reference to the content of the regulated speech, or that were adopted by the government because of disagreement with the message the speech conveys" are also considered content-based.  Id. (citations and internal quotations omitted).

All cases on which Attorney Plaintiffs rely consider content-based regulations that expressly govern the content of attorney speech and conduct, triggering strict scrutiny.  In Button, the Supreme Court considered a statute prohibiting solicitation of legal business on behalf of an organization.  371 U.S. at 419.  In United Transportation Union, the Supreme Court considered a statute making it a misdemeanor to solicit damages suits against railroads.  401 U.S. at 578.  In Humanitarian Law Project, the Supreme Court considered whether a statute prohibiting material support to terrorist organizations impaired attorneys' rights to provide legal training.  561 U.S. at 27-28.  In Velazquez, the Supreme Court considered a restriction prohibiting legal representation funded by recipients of LSC money if the representation involved efforts to amend or challenge existing welfare law.  531 U.S. at 536-37.  Finally, In re Primus considered the constitutionality of ethical rules against soliciting legal business where an attorney solicited a prospective litigant on behalf of an advocacy organization.  436 U.S. at 432-39.

This action is quite different.  Here, Attorney Plaintiffs assert transfers outside the AOR impede their ability to speak with and advise their immigrant clients.  (See Compl. ¶ 107-108.)  These challenged transfers are not express restrictions on attorney speech or expressive conduct, but an administrative decision that impacts Attorney Plaintiffs' ability to provide legal services to

their clients.[8]  Furthermore, Plaintiffs offer no evidence that the transfers "cannot be justified without reference to the content" of their speech.  See Reed, 135 S. Ct. at 2227.  Accordingly, strict scrutiny does not govern this claim.

The Court further notes Plaintiffs offer no argument as to how the prospective transfers constitute speech regulation, either content-based or content-neutral.  (See Mot. at 18-20; Reply 9-10.)  "Speech restrictions are content-neutral when they can be justified without reference to the content of the regulated speech."  Honolulu Weekly, Inc. v. Harris, 298 F.3d 1037, 1043 (9th Cir. 2002).  Content-neutral regulation of speech is subject to intermediate scrutiny.  DISH Network Corp. v. FCC, 653 F.3d 771, 777-778 (9th Cir. 2011) (citing Turner Broadcasting System, Inc. v. FCC, 512 U.S. 662, 642 (1994)).  Such content-neutral restrictions are permissible when they are "narrowly tailored to serve a significant governmental interest, and . . . leave open ample alternative channels for communication of the information."  Mothershed v. Justices of the Supreme Court, 410 F.3d 602, 611 (9th Cir. 2005).  In Honolulu Weekly, the Ninth Circuit considered a content-neutral ordinance requiring publishers who distribute publications on a certain block to use a particular type of newsrack.  298 F.3d at 1041.  In Mothershed, the Ninth Circuit considered the State of Arizona Supreme Court's content-neutral rules prohibiting retention of out-of-state counsel without regard to the subject matter of the representation.  410 F.3d at 611-12.  In DISH, the Ninth Circuit considered a content-neutral regulation outlining when DISH could offer certain programs in HD.  653 F.3d at 777.  Each of these cases share something this action lacks: regulations expressly restricting expressive conduct without regard to substance.  Here, the prospective transfers are silent as to any expressive conduct.  Accordingly, the Court is unpersuaded that Attorney Plaintiffs' First Amendment rights are implicated at all, and Attorney Plaintiffs fail to provide authority to the contrary.  The Court finds Attorney Plaintiffs have not established their First Amendment rights are implicated and need not apply an intermediate scrutiny analysis.  Thus, Plaintiffs have not established they are likely to succeed on the merits of their First Amendment claims, nor do they raise serious questions as to the merits of these claims.

### c.  APA Claims

#### i.  Standing

Defendants argue Immigrant Plaintiffs lack standing to raise their APA claim.  (Opp'n at 9-11.)  "Constitutional standing concerns whether the plaintiff's personal stake in the lawsuit is sufficient to make out a concrete 'case' or 'controversy' to which the federal judicial power may extend under Article III, § 2."  Pershing Park Villas Homeowners Ass'n v. United Pacific Ins. Co., 219 F.3d 895 (9th Cir. 2000).  "[T]he irreducible constitutional minimum of standing" is comprised of three elements: (1) an injury-in-fact; (2) a causal connection between the injury and challenged conduct such that the injury is "fairly traceable" to the challenged action; and (3) it

---

[8] The Court notes that at least some of this difficulty arises from Attorney Plaintiffs' limited funding and the fact that they represent indigent clients.  (See, e.g., Glicken Decl. ¶¶ 4-5.)

must be "likely," not merely "speculative" that the injury can be redressed by a favorable decision. <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560–61 (1992). The injury-in-fact must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." <u>Id.</u> at 560. "The party invoking federal jurisdiction bears the burden of establishing these elements." <u>Id.</u> at 561.

Defendants assert Plaintiffs do not show they face the concrete, imminent injury they hypothesize because the evidence indicates ICE intends to adhere to ICE Policy 11022.1 before transferring any putative class members outside the AOR. (Opp'n at 10-11.) The Court disagrees that this precludes standing. The Flores PI Declaration indicates the number of immigrants detained at the Facilities clearly exceeds the number of spaces available at Adelanto and that Adelanto is the only other immigration detention facility within the AOR. (Flores PI Decl. ¶ 4, 7-8.) Thus, Plaintiffs establish an imminent harm—transfer outside the AOR. Furthermore, if Plaintiffs establish such transfer will occur because ICE will not comply with ICE Policy 11022.1, that threatened harm is directly traceable to the alleged violation. Thus, Defendants' argument more appropriately concerns the likelihood that Plaintiffs will succeed on the merits of their APA claim. The Court finds Plaintiffs establish their standing as to their APA claim.

### ii. Merits

But the Court finds Plaintiffs are unlikely to succeed on the merits of their APA claim. Plaintiffs argue transferring class members outside of the AOR without following the transfer process provided in ICE Policy No. 11022.1 is arbitrary and capricious conduct in violation of the APA. (PI Mot. at 20-21.) An agency's failure to comply with its own procedures is "arbitrary, capricious" conduct which violates the APA. 5 U.S.C. § 706(a)(2); <u>United States ex. rel. Accardi v. Shaughnessy</u>, 347 U.S. 260, 267 (1954); <u>see also</u> <u>Morton v. Ruiz</u>, 415 U.S. 199, 235 (1974) (applying <u>Accardi</u> to internal IRS manual); <u>Alcaraz v. INS</u>. 348 F.3d 1150, 1162 (9th Cir. 2004) (recognizing <u>Accardi</u> extends beyond formal regulations). Thus, the Court agrees that <u>if</u> ICE were to transfer class members outside the AOR without first complying with ICE Policy 11022.1, such a transfer would be arbitrary and capricious. However, Plaintiffs have not provided evidence sufficient to persuade the Court that such a violation is likely. Plaintiffs offer the March 27, 2019 statements of the OSCD and an ICE spokeswoman indicating immigrants detained at the Facilities will be transferred outside of the AOR. (Ex. 2; Ex. 3.) They also assert ICE Deportation Officer Bell explained many that detained immigrants at the Facilities would be transferred outside the AOR. (Cuy Decl. ¶ 4-5.) However, the April 8, 2019 communication from Marty Ryan and the Flores PI Declaration each represent ICE will make transfer determinations on a case-by-case basis "in accordance with applicable law and ICE policy." (Ex. 7; Flores PI Decl. ¶ 11.) ICE Policy 11022.1 § 5.2 ¶ 3(f) provides that a transfer may be deemed necessary due to "emergent situations." Here, Defendants provide unrebutted evidence that there is not enough space at Adelanto to accept all class members detained at the Facilities. (Flores PI Decl. ¶¶ 7-8.) This context also renders the statements from OCSD, the ICE spokeswoman, and ICE Deportation Officer Bell less persuasive in supporting Plaintiffs' assertion that ICE will bypass ICE Policy 11022.1. Given that Adelanto will be the sole remaining

ICE detention facility within the AOR, and considering it has space for fewer immigrants than are detained at the Facilities, their statements reflect the reasonable—although certainly unfortunate—inference that a lack of space will render transfers outside the AOR "necessary." In this context, the isolated statements from OSCD, the ICE spokeswoman, and ICE Deportation Officer Bell do not persuade the Court that transfers outside the AOR are likely to bypass the ICE Policy 11022.1 strictures.

For these reasons, the Court does not find Plaintiffs' evidence establishes it is likely ICE will not comply with its own transfer policies. Plaintiffs further argue Defendants do not present evidence that any shortage of space at Adelanto should be remedied by releasing everyone legally eligible, rendering any transfers outside the AOR unnecessary. (Reply at 11.) The Court cannot adequately consider this argument now, as it lacks the following information: (1) the number of immigrants at Adelanto legally eligible for bond; (2) the number of immigrants at Adelanto subject to mandatory detention; and (3) immigrants who have been denied bond. Furthermore, Plaintiffs do not provide legal support for the proposition that any transfer outside the AOR is unnecessary solely because ICE is permitted, but not required, to release eligible immigrants. The Court does not find these are unwinnable arguments, but only that Plaintiffs fail to carry their burden for purposes of their PI Motion. Finally, Plaintiffs cite cases in which other courts have found that ICE routinely disregards ICE Policy 11022.1. (Reply at 11 (citing Alvarez, 338 F. Supp. 3d at 1050; ILL, 342 F. Supp. 3d at 1080-82).) This is not persuasive here. First, the Courts in Alvarez and ILL considered the actions of different field offices in different AORs, as Alvarez is a Northern District of California action and ILL is a District of Oregon action. Second, Plaintiffs provide no evidence indicating the Los Angeles Field Office has effected transfers in violation of ICE Policy 11022.1. For these reasons, the Court finds Plaintiffs fail to establish they are likely to succeed on the merits of their APA claim or that there are serious questions as to the merits of their APA claim.

Because the Court finds it does not have jurisdiction to enter a preliminary injunction on Plaintiffs' Due Process and INA claims and that Plaintiffs fail to establish a likelihood of success on the merits concerning Attorney Plaintiffs' First Amendment and APA claims, the Court will not address irreparable harm, balance of equities, or the public interest.

### 2. Likelihood of Irreparable Harm

A plaintiff must demonstrate she is likely to suffer irreparable harm in the absence of a preliminary injunction. See Winter, 555 U.S. at 20. The Ninth Circuit cautions that "[s]peculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction." Caribbean Marine Servs. v. Baldridge, 844 F.2d 668, 674 (9th Cir. 1988). A plaintiff seeking injunctive relief must demonstrate that "remedies available at law, such as monetary damages, are inadequate to compensate" for the injury. Herb Reed Enters., LLC v. Fla. Entm't Mgmt., 736 F.3d 1239, 1249 (9th Cir. 2013). "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting Elrod v. Burns, 427 U.S. 347, 373 (1976)).

Plaintiffs argue sub-class members will suffer irreparable harm in the absence of a preliminary injunction because they will have been deprived of their constitutional rights by being geographically separated from their retained counsel.  (PI Mot. at 22.)  The Court agrees. Represented Immigrant Plaintiffs provide evidence that transfer outside the AOR will unduly burden or effectively destroy relationships with their pro bono counsel.  (See, e.g., Inlender Decl.; Inlender Suppl. Decl.; Glicken Decl.; Glicken Suppl. Decl.)  Thus, the threatened transfers would directly harm a constitutionally protected relationship.  This alone is sufficient to establish irreparable harm.  See Melendres, 695 F.3d at 1002.  But represented Immigrant Plaintiffs face even more potential harm.  The context in which Plaintiffs retained their attorneys is dire.  Plaintiffs are detained and facing deportation, rendering the risk of irreparable harm especially high.  See Hernandez v. Sessions, 872 F.3d 976, 994-95 (9th Cir. 2017).  For example, many sub-class members are asylum seekers who, without a functioning counsel relationship, face potential deportation to a country where they may be persecuted or tortured.  (See Guevera-Melgar Decl. ¶ 1; Wabare Decl. ¶ 1; Queenida Decl. ¶ 1; Enabi Decl. ¶ 1.)  Many other sub-class members with meritorious removal defenses have deep roots in the community and face permanent banishment from their homes and families.  (See Moreno Decl. ¶ 1; Arroyo Decl. ¶ 1.) Destroying the counsel relationship renders a detained immigrant in the Facilities overwhelmingly less likely to obtain relief from removal.  See TRAC, Details on Deportation Proceedings in Immigration Court, https://trac.syr.edu/phptools/immigration/nta/ (last visited June 12, 2019).  Thus, transfer outside the AOR not only threatens irreparable harm to represented Immigrant Plaintiffs' constitutionally protected counsel relationship, it also threatens to prevent sub-class members from establishing their meritorious removal defenses for which the consequences are great.

Defendants first argue Plaintiffs only speculate that they will be transferred without adherence to ICE Policy 11022.1 is speculative.  (PI Opp'n at 22-23.)  However, as addressed above in Part III.B.1.c, the Court does not find represented Immigrant Plaintiffs are likely to prevail on this claim.  Because this claim is not the basis for the Court's preliminary injunction, the Court need not address this argument.

Second, Defendants argue there is no irreparable injury because Plaintiffs do not provide evidence that re-transfer back into the Los Angeles AOR is impossible.  (PI Opp'n at 25 (citing Orantes, 685 F. Supp. 1488.)  However, at the June 10, 2019 hearing, Defendants represented that when a detained immigrant is transferred to a detention facility in a different AOR, the government routinely requests a change of venue to where that immigrant is detained.  The Court notes that as to represented Immigrant Plaintiffs, such a practice appears contrary to Orantes.  685 F. Supp. at 1513.  Furthermore, the Court does not find eventual re-transfer undermines the argument that transfer now would create irreparable harm to the counsel relationship.  The Ninth Circuit recognizes the lack of in-person communication is harmful to the attorney-client relationship.  Orantes, 919 F.2d at 565-66.  Additionally, the landscape of immigration removal defense has changed substantially since Orantes and may involve more complicated maneuvering than was required of the Orantes asylum-seekers.  For example, many sub-class members are currently litigating parallel state court actions or filing petitions to United States Citizen and Immigrations Services.  (See Sac Decl. ¶ 7; Glicken Suppl. Decl. ¶ 9.)  These

efforts require continued and on-going visitation with counsel even when an IJ hearing is months in the future.  (See, e.g., Inlender Suppl. Decl. ¶ 6; Glicken Decl. ¶ 9.)  Accordingly, re-transfer does not cure the immediate damage to separation from retained counsel.  Furthermore, re-transfer consistent with <u>Orantes</u> does nothing to mitigate the harm to represented Immigrant Plaintiffs who rely on counsel for matters outside immigration court.

Finally, Defendants argue represented Immigrant Plaintiffs do not establish any "legal impediment" to maintaining their attorney-client relationship.  (PI Opp'n at 23-25.)  Specifically, they contend that represented Immigrant Plaintiffs are not "prohibited" from meeting with their counsel upon transfer and that any harm is speculative.  (Id.)  In <u>Orantes</u>, the district court found that transfer away from counsel interfered with the attorney-client relationship.  919 F.3d at 556. Thus, represented Immigrant Plaintiffs are harmed even in the absence of any express prohibitions on communication.  Lastly, the Court notes that any harm is not speculative. Monica Glicken of Public Law Center explains that Public Law Center does not have the resources to travel to detention facilities outside the AOR, which includes San Luis Obispo County.  (Glicken Decl. ¶ 5.)  Defendants latch on to San Luis Obispo County's inclusion in the Los Angeles AOR.  (PI Opp'n at 23-24.)  The San Luis Obispo detention center is located approximately 220 miles away from the Public Law Center's office, making farther than detention centers at San Diego, Calexico, and Bakersfield—all of which are not included in the Los Angeles AOR.  (Id.)  Defendant argues this means transfer outside the Los Angeles AOR would not preclude continued representation.  (Id.)  First, two ICE employees have indicated likely transfers to the San Francisco Bay Area, Florida, and other locations far outside the AOR. (Ex. 3; Cuy Decl. ¶¶ 4-5.)  Thus, Plaintiffs offer evidence that the transfers are not likely to be closer than the San Luis Obispo detention center.  Second, even if Public Law Center's clients were transferred to Calexico, San Diego, or Bakersfield, Glicken establishes that her organization does not have the resources to provide routine visits for a higher volume of clients at such distant facilities.  (Glicken Suppl. Decl. ¶ 6.)  At present, Public Law Center's detained immigrant clients are located only in Los Angeles County, Orange County, and San Bernardino County. (Id.)  The Court agrees with represented Immigrant Plaintiffs that the threatened harm is not merely speculative.

Thus, the Court finds the threatened harm is likely.  <u>Rodriguez v. Robbins</u>, 715 F.3d 1127, 1145 (9th Cir. 2013) (noting "it follows from out conclusion that the government's reading of [immigrant detention statutes] raises serious constitutional concerns that irreparable harm is <u>likely</u>, not just possible in the absence of preliminary injunctive relief") (internal quotation marks omitted).  The Court concludes represented Immigrant Plaintiffs demonstrate a likelihood of irreparable injury without the requested injunctive relief.

### 3. Public Interest & Balancing of Harms

Where the government is the opposing party, balancing of the harm and the public interest merge.  <u>See</u> <u>Nken v. Holder</u>, 556 U.S. 418, 435 (2009).  Thus, the Court asks whether any significant "public consequences" would result from issuing the preliminary injunction.  <u>Winter</u>, 555 U.S. at 24.  Plaintiffs assert these circumstances weigh in their favor, as the requested relief

simply preserves their ability to maintain their established counsel relationship. (PI Mot. at 22-23.) They assert any administrative costs are "far outweighed by the considerable harm to [their] constitutional rights" absent an injunction. (Id. at 23 (citing Hernandez v. Sessions, 972 F.3d 976, 996 (9th Cir. 2017); ILL, 342 F. Supp. 3d at 1082).) Plaintiffs' requested injunction, therefore, maintains the status quo. Defendants' PI Opposition does not address these arguments, nor does it assert Defendants will suffer any injury by not transferring represented Immigrant Plaintiffs outside the AOR. Furthermore, the Court notes that as of July 6, 2019, Defendants estimate there are approximately 240 available spaces at Adelanto. As addressed above, Plaintiffs estimate there are approximately 75 represented Immigrant Plaintiffs in the sub-class. See supra Part III.A.3.a. The Court also reiterates that represented Immigrant Plaintiffs have established they will likely suffer irreparable injury if the preliminary injunction is not granted. See supra Part III.B.2. Under such circumstances, the balance of the equities weighs in favor of granting a preliminary injunction. See Rodriguez v. Robbins, 715 F.3d 1127, 1145 (9th Cir. 2013) (finding balance of equities favored granting a preliminary injunction where "[t]he government provide[d] almost no evidence that it would be harmed in any way by the district court's order, other than its assertion that the order enjoins 'presumptively lawful' government activity"); Zepeda v. I.N.S., 753 F.2d 719, 727 (9th Cir. 1983) ("[T]he INS cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations."). Accordingly, the Court finds the balance of the equities and public interest favor granting the preliminary injunction as to represented Immigrant Plaintiffs.

## IV.    CONCLUSION

For the reasons above, the Court GRANTS-IN-PART and DENIES-IN-PART Plaintiffs' Certification Motion and provisionally certifies the following sub-class: "[a]ll immigrants imprisoned at the James A. Musick Facility and the Theo Lacy Facility and who have attorneys within the ICE Los Angeles Field Office's Area of Responsibility."

The Court also GRANTS-IN-PART and DENIES-IN-PART Plaintiffs' PI Motion. Until this litigation is resolved, the Court ORDERS:

1. Defendants must refrain from transferring immigration detainees currently held at the Theo Lacy and James A. Musick Facilities to facilities outside the ICE Los Angeles Field Office's Area of Responsibility if those detainees have attorneys within the ICE Los Angeles Field Office's Area of Responsibility;

2. If Defendants choose to comply with this Order by transferring immigration detainees to the Adelanto Detention Facility, Defendants must not transfer any immigration detainee held at the Adelanto Detention Facility to a facility outside the ICE Los Angeles Field Office's Area of Responsibility if that detainee has an attorney within the ICE Los Angeles Field Office's Area of Responsibility; and

///
///

3.  Nothing in this Order shall be understood to prohibit Defendants from releasing on bond or parole any immigration detainee in any facility.

**IT IS SO ORDERED.**