UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **SACV 19-815 JGB (SHKx)** | Date | January 2, 2020 |
| Title | ***Ubaldo Arroyo, et al. v. United States Department of Homeland Security, et al.*** | | |

Present: The Honorable   JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

Proceedings:   **Order (1) GRANTING Plaintiffs' Motion for Attorneys' Fees (Dkt. No. 50); and (2) VACATING the January 6, 2020 Hearing (IN CHAMBERS)**

Before the Court is a Motion for Attorneys' Fees filed by Plaintiffs Ubaldo Arroyo, Jorge Poroj Sac, Atemnkeng Becky Njualem, Sergio Jonathan Moreno, Elieser David Blea, Santiago Guevara-Melgar, Bashir Abdi Wabare, Tanyi Ferick Awungdeu, Nguanyi Atabong Queenida, Asmerom Zemede Enabi, Public Law Center, and Public Counsel (collectively, "Plaintiffs").[1] ("Motion," Dkt. No. 50.)  The Court finds the Motion appropriate for resolution without a hearing.  See Fed. R. Civ. P. 78; L.R. 7-15.  After considering the papers filed in support of and in opposition to the Motion, the Court GRANTS the Motion.  The Court vacates the hearing set for January 6, 2020.

## I.  BACKGROUND

On March 27, 2019, the Orange County Sherriff's Department ("OCSD") notified Defendant United States Immigration and Customs Enforcement ("ICE") that it would terminate its contract to house immigrant detainees.  (Motion at 2.)  Both ICE and OCSD subsequently announced that the affected detainees, including those represented by local counsel, would be moved out of the ICE Los Angeles Field Office's Area of Responsibility ("AOR") to detention facilities in San Francisco, Florida, and other states.  (Id. at 2–3.)

---

[1] Plaintiffs Arroyo, Sac, Njualem, Moreno, Blea, Guevara-Melgar, Wabare, Awungdeu, Queenida, and Enabi will be referred to collectively as "Immigrant Plaintiffs."  Public Law Center and Public Counsel will be referred to as "Organization Plaintiffs."

On May 2, 2019, Plaintiffs filed a complaint against the following Defendants: United States Department of Homeland Security ("DHS"), Kevin K. McAleenan, ICE, Ronald D. Vitello, Thomas Giles, Jennifer Herrera, Luke South, and Lisa Von Nordheim (collectively, "Defendants"). ("Complaint," Dkt. No. 1.) Plaintiffs' Complaint is a verified petition for writ of habeas corpus and a complaint for injunctive and declaratory relief. (Id.) The Complaint alleges that Defendants' conduct violates the Immigration and Nationality Act ("INA"), the Due Process Clause of the Fifth Amendment, the First Amendment (on behalf of Immigrant Plaintiffs), the First Amendment (on behalf of Organization Plaintiffs), and the Administrative Procedure Act ("APA").

On May 13, 2019, Plaintiffs moved to certify a class and for a preliminary injunction. (Dkt. Nos. 14, 17.) On June 20, 2019, the Court granted-in-part and denied-in-part those motions and provisionally certified a class of "[a]ll immigrants imprisoned at the James A. Musick Facility and the Theo Lacy Facility and who have attorneys within the ICE Los Angeles Field Office's Area of Responsibility." ("Order," Dkt. No. 46 at 33.) The Court further enjoined Defendants from "transferring immigration detainees currently held at the Theo Lacy and James A. Musick Facilities to facilities outside the ICE Los Angeles Field Office's Area of Responsibility if those detainees have attorneys within the ICE Los Angeles Field Office's Area of Responsibility." (Id.) On July 18, 2019, Federal Defendants filed a declaration stating that there were no immigration detainees housed in either facility maintained by the OCSD. (Dkt. No. 41.) Plaintiffs voluntarily dismissed their complaint on August 5, 2019. (Dkt. No. 44.)

On October 21, 2019, Plaintiffs filed this Motion. (Motion.) In support of the Motion, Plaintiffs filed the Declaration of Ahilan Arulanantham, the Declaration of Carol Sobel, and the Declaration of Jayashri Srikantiah. ("Arulanantham Declaration," Dkt. No. 50-2, "Sobel Declaration," Dkt. No. 50-4, "Srikantiah Declaration," Dkt. No. 50-6.) Defendants Thomas Giles, Jennifer Herrera, Kevin K. McAleenan, United States Department of Homeland Security, United States Immigration and Customs Enforcement, and Ronald D. Vitiello (collectively, "Federal Defendants") opposed the Motion on November 25, 2019. ("Opposition," Dkt. No. 51.) Plaintiffs replied on December 16, 2019. ("Reply," Dkt. No. 52.) In support of the Reply, Plaintiffs filed a Supplemental Declaration of Ahilan Arulanantham. ("Arulanantham Supplemental Declaration," Dkt. No. 52-1.)

## II.   LEGAL STANDARD

The Equal Access to Justice Act ("EAJA") provides that "a court shall award to a prevailing party . . . fees and other expenses . . . incurred by that party in any civil action . . . including proceedings for judicial review of agency action, brought by or against the United States . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). The burden of proving the substantial justification exception to the mandatory award of fees under the EAJA lies with the government. Love v. Reilly, 924 F.2d 1492, 1495 (9th Cir. 1991). The Supreme Court has defined "substantial justification" as:

justified in substance or in the main – that is, justified to a degree that could satisfy a reasonable person. [This standard] is no different from the "reasonable basis in both law and fact" formulation adopted by the Ninth Circuit and the vast majority of other Courts of Appeals that have addressed this issue.

Pierce v. Underwood, 487 U.S. 552, 565 (1988). A position does not have to be correct to be substantially justified; rather, the standard is satisfied if there is a "genuine dispute." Id. at 565 and 566 n.2; see also Lewis v. Barnhart, 281 F.3d 1081, 1083 (9th Cir. 2002). In determining the reasonableness of the government's position under the 'totality of the circumstances' test, the district court reviews both the underlying governmental action being defended in the litigation and the positions taken by the government in the litigation itself. 28 U.S.C. § 2412(d)(1)(B); Gutierrez v. Barnhart, 274 F.3d 1255, 1259 (9th Cir. 2001).

"The amount of attorneys' fees awarded under EAJA must be reasonable." Nadarajah v. Holder, 569 F.3d 906, 910 (9th Cir. 2009). Attorney's fees for hours that are not "reasonably expended" or that are "excessive, redundant, or otherwise unnecessary" are not compensable. See Hensley v. Eckerhart, 461 U.S. 424, 434 (1983); see also I.N.S. v. Jean, 496 U.S. 154, 161 (1990) (holding Hensley applies to EAJA cases). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley, 461 U.S. at 433–34. However, in determining what constitutes a reasonable fee award under the EAJA, "courts should generally defer to the 'winning lawyer's professional judgment as to how much time he was required to spend on the case.'" See Costa v. Commissioner of Social Security Administration, 690 F.3d 1132, 1136 (9th Cir. 2012) (quoting Moreno v. City of Sacramento, 534 F.3d 1106, 1112 (9th Cir. 2008)).

## III.   DISCUSSION

Plaintiffs argue that they are entitled to $144,876.04 in attorneys' fees and costs because (1) they are the prevailing party[2], (2) Defendants' position was not substantially justified, and (3) the hours they expended and the enhanced rates they seek are reasonable considering the complexity of the issues involved. (See Motion; Reply.) Federal Defendants disagree on all three points and argue that an award of attorneys' fees is inappropriate. (See Opposition.)

## A. Prevailing Party

A party is a "prevails" for the purposes of EAJA recovery when it achieves a "material alteration of the legal relationship between the parties" that is "judicially sanctioned."

---

[2] Plaintiffs also argue that because Organization Plaintiffs are nonprofit organizations as described by section 501(c)(3) of the Internal Revenue Code and Individual Plaintiffs are individuals, all are eligible to recover attorneys' fees under EAJA. (Motion at 5.) Defendants do not dispute this point.

**CIVIL MINUTES—GENERAL**   Initials of Deputy Clerk iv

<u>Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.</u>, 532 U.S. 598, 605 (2001).  Therefore, when "the plaintiff wins a preliminary injunction and the case is subsequently rendered moot by the defendant's own actions" the plaintiff may be the prevailing party.  <u>See</u> <u>Higher Taste, Inc. v. City of Tacoma</u>, 717 F.3d 712, 717 (9th Cir. 2013).

Federal Defendants argue that Plaintiffs did not prevail because Defendants never intended to do what Court ultimately enjoined them from doing.  (Opposition at 1–3.)  They assert that "[e]ven before Plaintiffs filed their Complaint, a pre-existing ICE policy directive prohibited Defendants from transferring any detainee with immediate family or attorney of recorded within the AOR" and "Defendants never intended to deviate from that policy."  (<u>Id.</u> at 1.)  But what Defendants intended to do is irrelevant to whether the preliminary injunction altered the legal relationship between the parties.  Before the preliminary injunction issued, Defendants were theoretically free to choose their position with respect to the represented detainees—they could (as they claim they were planning to do) choose to keep represented immigrants within the AOR.   Alternatively, they could opt to move the represented detainees to detention facilities elsewhere.  After the preliminary injunction issued, they no longer had a choice to move the represented detainees out of the AOR.  The injunction thereby altered the parties' legal relationship—even if the outcome was no different than what Defendants intended to do.

Moreover, based upon the arguments Federal Defendants asserted in the preliminary injunction briefing, the Court is skeptical that Defendants never intended to transfer the represented detainees.  (<u>See, e.g.</u>, "Preliminary Injunction Opposition," Dkt. No. 24 at 1 ("should any transfers out of the AOR be dictated by the twin realities of Congress's mandate that certain aliens be detained and the emergent need of loss of facility space in the AOR, those transfers would fully comport with ICE policy, the Immigration and Nationality Act ("INA"), and the Constitution")).  As Plaintiffs point out, "if Defendants had agreed in advance to wind down operations at the Orange County facilities without transferring represented immigrants outside the Los Angeles AOR, then Plaintiffs would not have filed this suit."  (Reply at 3.)  Accordingly, the Court concludes that Plaintiffs prevailed for the purposes of EAJA.

## B.  Substantially Justified Position

Defendants bear the burden to establish their position was substantially justified under the "totality of the circumstances."  <u>See</u> <u>Gutierrez</u>, 274 F.3d at 1259; <u>Meinhold v. U.S. Dep't of Defense</u>, 123 F.3d 1275, 1277 (9th Cir. 1997).  Federal Defendants' position includes both the underlying action being defended and the arguments advanced during the litigation.  <u>See</u> <u>Gutierrez</u>, 274 F.3d at 1259.  The underlying act here is Defendant's decision to move detainees out of the AOR.  Throughout the preliminary injunction briefing, Federal Defendants argued they were entitled to move detainees, even when those detainees had attorneys or family members within the AOR.  (<u>See, e.g.</u>, Preliminary Injunction Opposition at 1.)

Federal Defendants first argue that their position was substantially justified because the Court accepted Defendants' argument that it lacked jurisdiction to hear the claims of

unrepresented detainees.  (Opposition at 4.)  While this argument does show that some of the litigation positions taken by Defendants were substantially justified, it does not show that the underlying acts, namely the decision to move the detainees, was substantially justified.  By de

Next, Federal Defendants argue that because the Court determined Plaintiffs were not likely to succeed on the merits of their APA and First Amendment claims, their position was substantially justified.  (Opposition at 4.)  Again, this argument fails to show that the "totality of the circumstances" justify Federal Defendants' position.  While the Court did not find a likelihood of success on the APA and First Amendment claims—it did find a likelihood of success for the Due Process and INA claims.  (Preliminary Injunction Order at 25.)  The APA, First Amendment, INA, and Due Process claims arose from the same underlying act: Defendants' decision to move detainees out of the AOR.  The Court therefore found that the underlying act was likely unlawful.  That the underlying act as alleged likely violated only two rights rather than the claimed four does not make it substantially justified.

Finally, Federal Defendants argue that their position that the Court lacked jurisdiction over the claims of represented detainees was substantially justified because it was the result reached in Alvarez.  (Opposition at 5–6.)  Federal Defendants are correct—their reliance on Alvarez was substantially justified.  However, the Alvarez court found only that it lacked over jurisdiction to hear any claims regarding the right to representation in removal proceedings.  Alvarez v. Sessions, 338 F. Supp 3d 1042, 1048 (N.D. Cal.).   It made no finding about whether the government's decision to move detained immigrants away from their attorneys violated that right.  In fact, the Alvarez Court explicitly noted:

> This order should not [be] interpreted as a judicial approval of ICE's decision to transfer Petitioners. While the court's application of the law compels it to dismiss this case, the law does not compel it to countenance an agency's action that is contrary to the norms of this country's justice system.

Id. at 1050–51.  Alvarez, therefore, fails to provide any support for Federal Defendants' claim that their underlying acts were substantially justified.  Quite the contrary—it is further evidence that Defendants' position contravened clearly established law and norms.

Notably, while the Opposition points to small litigation points on which Federal Defendants prevailed, it fails to explain how Federal Defendants' underlying acts—most critically, deciding to move represented detainees out of the AOR—were substantially justified.  Ninth Circuit precedent is clear: the Due Process Clause guarantees that immigrants have the right to be represented by counsel of their choosing.  See Baltazar-Alcazar v. I.N.S., 386 F.3d 940, 944 (9th Cir. 2004) (citing Tawadrus v. Ashcroft, 364 F.3d 1099, 1103 (9th Cir. 2004); Colindres-Aguilar v. INS, 819 F.2d 259, 261 n.1 (9th Cir. 1987) (noting an immigrant's right to counsel is a statutory right under 8 U.S.C. § 1362 as well as a right protected by the Due Process Clause)).  And that right is "fundamental"—immigration officials must respect it "in substance as well as in name."  Orantes-Hernandez v. Thornburgh, 919 F.2d 549, 554 (9th Cir. 1990) (quoting Baires v. INS, 856 F.2d 89, 91 n.2 (9th Cir. 1988)).

Moving detainees far from their retained counsel violates immigrant detainees' right to counsel. See Orantes, 919 F.3d at 564 (affirming injunction restricting transfers because they "interfere[d] with established attorney-client relationships"). As the Court found in the Preliminary Injunction Order, the Immigrant Plaintiffs' counsel lacked the resources to represent them if they were moved out of the AOR and Immigrant Plaintiffs lacked the resources to find new counsel. (Preliminary Injunction Order at 23.) Moreover, frequent confidential in-person visits are necessary to maintain a robust attorney-client relationship in the immigration context. (Id.) Accordingly, the Court concludes that because moving detainees far from their counsel so clearly violates their Due Process right to counsel, Defendants' underlying acts were not substantially justified.

## C. Reasonable Attorneys' Fees

Plaintiffs seek $144,876.04 in attorneys' fees and costs.[3] (Reply at 12.) Federal Defendants argue that these numbers should be reduced (1) to reflect Plaintiffs' partial success, (2) to eliminate redundancies, and (3) to match the statutory rate rather than the enhanced rate Plaintiffs seek. (Opposition at 7–12.) None of these arguments warrant a reduction in attorneys' fees and costs.

First, Plaintiffs' counsel obtained a successful result for both represented and non-represented detainees. While the Court only enjoined the transfer of the represented detainees, Plaintiffs' counsel negotiated with Defendants to reach an agreement that Defendants would not transfer any immigrant detainees outside of the AOR. (Motion at 4.) Had Defendants declined this agreement, Plaintiffs' counsel was prepared to amend their complaint and file a discovery motion. (Reply at 8.) Federal Defendants assert that they were not planning to transfer any detainees out of the AOR, so Plaintiffs' counsel's negotiations did nothing to change the status quo. (Opposition at 2–3.) Plaintiffs however, have submitted evidence showing that Defense counsel urged Plaintiffs' counsel to delay filing the discovery motion to give Defense counsel time to obtain approval from the "East Coast" for the proposed agreement. (Reply at 9; Arulanantham Supplemental Declaration ¶ 5, Exhibit A.) This email demonstrates that it was the negotiations with Plaintiffs' counsel and the threat of continued litigation that prompted the agreement—not Defendants' alleged previous intent.

Second, Plaintiffs' hours calculation does not include any redundancies. Defendants point to one hearing and five calls where two attorneys were present and argue that "these redundant hours should be deducted." (Opposition at 9–10.) This argument is frivolous, insincere, and a waste of the Court's time. Per Ninth Circuit precedent that Federal Defendants

---

[3] The Motion requests $137,031.87. (Motion at 16.) In response to Federal Defendants' argument that the fees calculation includes less than four hours of clerical work billed by a paralegal, Plaintiffs removed those hours and reduced the remainder of that paralegal's hours by 10%. (Reply at 10.) Plaintiffs also added the time spent drafting the Reply. (Id. at 12.)

(continued . . . )

themselves cite, two attorneys present for an important call or hearing is not redundant.  <u>Probe v. State Teachers' Ret. Sys.</u>, 780 F.2d 776, 785 (9th Cir. 1986) ("In an important class action litigation [], the participation of more than one attorney does not constitute an unnecessary duplication of effort.").[4]  Moreover, Defendants had <u>three</u> attorneys present at the hearing and on almost every call.  (Supplemental Arulanantham Decl. ¶ 7.)  Unless Defense counsel agrees it wasted taxpayer resources at the hearings and on the calls, it should not level accusations of redundancies at Plaintiffs' counsel.

Third, Plaintiffs' counsel's competent representation warrants the enhanced rate they seek.  Plaintiffs have submitted the declarations of two non-parties, Professor Jayashri Srikantiah and Attorney Carol Sobel, which state that the rates Plaintiffs seek are reasonable for the work that was done no attorney would be available to do the work at the EAJA statutory rate.  (<u>See</u> Srikantiah Declaration; Sobel Declaration.)  Plaintiffs' counsel each have experience litigating complex cases involving the constitutional rights of immigrant detainees.  (Arulanantham Declaration ¶¶ 7–27.)  All three, therefore, have distinctive knowledge and specialized skill in this complex area of the law.  The Ninth Circuit has specifically recognized that Mr. Arulanantham's knowledge and skill warrant enhanced rates under the EAJA for his work litigating the constitutional rights of detained immigrants.  <u>See e.g.</u>, <u>Nadarajah v. Holder</u>, 569 F.3d 906, 914 (9th Cir. 2009).

This case required Plaintiff's counsel's specialized knowledge and expertise.  It involved unique issues of statutory jurisdiction.  When Plaintiffs' counsel received notification about the pending transfers, they immediately identified the threat to their clients' constitutional rights and quickly moved to obtain emergency relief.  (Motion at 2–3.)  It is not likely that lawyers without Plaintiffs' counsel's specialized knowledge would have been able to obtain similar results.  (<u>See also</u> Srikantiah Declaration ¶¶ 10–12.)  Accordingly, the Court finds the number of hours worked on this case by Plaintiff's counsel was reasonable and the rates Plaintiffs seek are warranted.

## IV.   CONCLUSION

For the reasons above, the Court GRANTS Plaintiffs' Motion.  Plaintiffs' counsel are awarded $144,876.04 in attorneys' fees and costs.   The January 6, 2019 hearing is VACATED.

**IT IS SO ORDERED.**

---

[4] Defense counsel cites <u>Probe</u> to support their argument that the Court should reduce Plaintiffs' fee award because two attorneys attended a hearing and five calls.  <u>Probe</u> holds the opposite—that multiple attorneys are not redundant in important cases.  <u>See</u> <u>Probe</u>, 780 F.2d 776, 785 (9th Cir. 1986).